DECISION AND JOURNAL ENTRY
{¶ 1} Appellants, Buckeye Corrugated, Inc., and its individual directors (collectively, "BCI"), appeal the judgment of the Summit County Court of Common Pleas that resolved several post-settlement issues in favor of Appellee Roy K. Allen. We reverse.
 {¶ 2} This is the second appeal in a case that settled more than two years ago. On May 3, 2006, the parties reduced their understanding to writing in a document they refer to as the "Term Sheet," which provided for payments from BCI to Mr. Allen in biannual installments for ten years:
 "[T]he balance shall be evidenced by an installment cognovit Promissory Note executed and delivered on the Closing Date and payable in 20 equal semi-annual installments on the first business day of each subsequent January and July (commencing with the first business day of January, 2007) plus interest to be computed at one and one-half percent (1 ½ %) less than the local prime rate in effect from time to time in Akron, Ohio. * * * The Promissory Note shall be subordinated to all of BCI's existing and future bank debt, with [Mr. Allen] to sign by the Closing Date a subordination agreement in commercially reasonable form acceptable to BCI's bank lenders." *Page 2 
On May 8, 2006, the parties made their agreement a part of the record in the trial court. The trial court dismissed the case on May 11, 2006, and retained jurisdiction to enforce the settlement agreement. Post-settlement enforcement motions were not long in coming. By July 5, 2006, BCI had moved the trial court to enforce the settlement agreement, arguing that Mr. Allen refused to sign the subordination agreement to which the Term Sheet referred and which had been approved by BCI's lenders. Specifically, Mr. Allen argued that the subordination agreement was not commercially reasonable because it contained an indefinite "standstill" provision.
 {¶ 3} The trial court conducted a hearing on the motion to enforce that spanned three days: July 25, 2006, and August 28-29, 2006. At the outset of the hearing, the parties agreed that they had entered into a settlement, but they disagreed about whether the indefinite standstill provision was "commercially reasonable." By the time the hearing commenced, BCI had also proposed a more limited 180-day standstill provision. A representative of KeyBank testified that the 180-day standstill provision would be acceptable to KeyBank, but National City Bank expressed reservations. During the hearing, the trial court heard testimony regarding the indefinite standstill provision, the 180-day standstill provision, and subordination agreements containing standstill provisions in general.
 {¶ 4} On September 7, 2006, the trial court determined that the subordination agreement containing the indefinite standstill provision was "not commercially reasonable in the context of this entire litigation." The trial court elaborated:
 "It is evident that the subordination agreements were drafted without any consideration of the settlement terms of the parties. The Court finds that the banks failed to present evidence to indicate that a standstill clause is necessary or reasonable. Further, the banks failed to establish that their debt was in jeopardy of being uncollectible now or in the future. The Court's reading of the subordination documents indicate[s] that even without the `standstill' and `claw-back' *Page 3 
provisions, the banks would always have priority in collection over Allen. While Allen never disputed that his debt was subordinate to the bank lenders, he has never agreed to subordinate his debt to any other creditors. It is Allen's concern that the `standstill' provision could potentially place him behind inferior creditors. As such, these provisions were never contemplated between the parties."
The trial court refused to enforce the settlement agreement by ordering Mr. Allen to execute the subordination agreement. The trial court did not, however, foreclose the possibility that the parties could provide a subordination agreement that would satisfy the trial court's test of commercial reasonableness:
 "Both KeyBank and National City Bank have indicated a willingness to remedy disputes regarding the `claw-back' provision by changing the language contained in the subordination agreement. However, testimony indicated that KeyBank still wants a 180-day `standstill' period and National City Bank wants an indefinite `standstill' period. Without redefining for the parties what a `commercially reasonable' agreement would entail in this case, the Court does believe that the contents in Exhibit I might lead the Court to a different conclusion but would require the unanimity of all Buckeye's bank creditors."
 {¶ 5} On October 5, 2006, in apparent reliance on this portion of the trial court's order, BCI filed a second motion to enforce the settlement agreement "based upon a new lending arrangement and a revised subordination agreement." The revised subordination agreement contained a 180-day standstill provision:
 "The borrower shall not make, and the undersigned shall not receive, any payments otherwise permitted hereunder, and the undersigned shall not take any collateral security for any of the Indebtedness, demand payment of, sue for, attempt to enforce or collect, or commence any action or proceeding in respect of, any of the Indebtedness, or commence, or join with any other creditor in commencing, any bankruptcy, reorganization or insolvency proceedings with respect to the Borrower until: * * * (c) the expiration of a one hundred eighty (180) day period that commences on the date the Bank receives from the undersigned an Acceleration Notice."
Mr. Allen responded, on November 13, 2006, with his own motion to enforce the settlement agreement accompanied by a proposed subordination agreement without a standstill provision. In the alternative, Mr. Allen asked the Court to enforce the settlement agreement by declaring *Page 4 
that execution of a subordination agreement was unnecessary or excused under the circumstances. In response to these motions, on December 27, 2006, the trial court concluded that "that there was no `meeting of the minds' on an essential element of the settlement agreement, i.e., the subordination agreement and its construction and content"; vacated its May 11, 2006, order; and returned the case to its active docket.
 {¶ 6} BCI appealed to this Court, and Mr. Allen cross-appealed. On October 10, 2007, this Court reversed, concluding that the trial court erred in determining that the parties had not reached a settlement:
 "Because the parties had agreed to all the essential terms of their settlement, there was an enforceable settlement agreement. The parties agreed that they had reached an enforceable settlement and, in fact, all parties had moved the trial court to enforce the settlement agreement. Although it is true that `[a] meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract,' all essential terms of the settlement had been agreed upon and committed to writing, and the parties never disputed that fact. The disagreement between the parties in this case did not concern the existence of any material term of the settlement, but instead focused on the meaning of one of those terms. A dispute over the meaning of a term does not constitute an absence of a material term that could defeat the enforceability of the contract. The trial court had no basis to vacate the parties' settlement but instead should have resolved the parties' dispute over the meaning of that term.
 "The parties had agreed to all of the material terms of their settlement, including the term that was the primary focus of their dispute: that Allen would execute a subordination agreement, that the bank lenders were required to approve it, and that the subordination agreement must be in a `commercially reasonable form.' BCI had proposed a subordination agreement that had been approved by its bank lenders. Therefore, the parties' sole dispute was whether the proposed subordination agreement was in a `commercially reasonable form.'
 "* * *
 "Accordingly, this matter must be remanded to the trial court for a determination of whether the subordination agreement proposed by BCI and its bank lenders is `commercially reasonable' as that term is used in the parties' settlement agreement." (Internal citations omitted.) Allen v. Bennett, 9th Dist. Nos. 23570, 23573, 23576, 2007-Ohio-5411, at ¶ 14-15, 19 ("Allen I "). *Page 5 
Observing that the trial court had already conducted a hearing on the disputed term, this Court remanded the matter to the trial court "for a determination of whether the proposed subordination agreement is `commercially reasonable' and, consequently, whether the trial court will order enforcement of the settlement agreement." Id. at ¶ 22.
 {¶ 7} On December 14, 2007 and February 14, 2008, the trial court conducted a second hearing over BCI's objection that this Court did not remand the case for additional factfinding. On February 21, 2008, the trial court concluded that the subordination agreement that contained a 180-day standstill provision "is not commercially reasonable within the context of the parties' Settlement Agreement"; determined that BCI owed Mr. Allen installment payments under the terms of the settlement agreement dating to June 23, 2006; and calculated interest due him. BCI timely appealed.
 ASSIGNMENT OF ERROR I "THE TRIAL COURT ERRED AS A MATTER OF LAW AND EXCEEDED THE SCOPE OF THIS COURT'S INSTRUCTIONS ON REMAND BY DENYING APPELLANTS' MOTION TO ENFORCE THE SETTLEMENT AGREEMENT AND REFUSING TO COMPEL ALLEN TO SIGN KEYBANK'S REVISED SUBORDINATION AGREEMENT."
 {¶ 8} BCI's first assignment of error is twofold. As an initial matter, BCI argues that the trial court went beyond the scope of this Court's mandate by conducting a second hearing. BCI also argues that instead of determining whether the subordination agreement was commercially reasonable, the trial court's action "effectively rewrites the Settlement Agreement in order to reach a more equitable result for Allen."
 {¶ 9} With respect to the scope of this Court's remand, we agree with BCI. The doctrine of the law of the case "is a rule of practice analogous to estoppel." Hopkins v. Dyer, 104 Ohio St. 3d 461,2004-Ohio-6769, at ¶ 22. Application of the doctrine limits the ability of a *Page 6 
trial court to rule in a way that is inconsistent with a decision of a reviewing court in the same case, and "the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels." (Citations omitted.) Nolan v. Nolan (1984),11 Ohio St. 3d 1, 3. The doctrine also limits the actions that a trial court may take on remand to the scope of the reviewing court's mandate and places a corresponding limitation on the ability of an appellant to assert error in subsequent appeals. Neiswinter v. Nationwide Mut. Fire Ins.Co., 9th Dist. No. 23648, 2008-Ohio-37, at ¶ 10.
 {¶ 10} We agree with BCI that the trial court exceeded the scope of this Court's mandate by conducting an additional evidentiary hearing on December 14, 2007, and February 14, 2008. BCI's first assignment of error is, therefore, sustained to that extent. As this Court stated inAllen I, "this matter must be remanded to the trial court for a determination of whether the subordination agreement proposed by BCI and its bank lenders is `commercially reasonable' as that term is used in the parties' settlement agreement." Id. at ¶ 19. This Court emphasizes that this determination must be made based on the record before the trial court at the time of our remand in Allen I. BCI has also asked this Court to "remand with instructions to enforce the Settlement Agreement" instead of remanding for further proceedings. This Court declines to do so. As BCI observes, this is the second appeal in this case. But this Court will not address matters that have not yet been determined by the trial court.
 ASSIGNMENT OF ERROR II "THE TRIAL COURT ERRED AS A MATTER OF LAW AND EXCEEDED THE SCOPE OF THIS COURT'S INSTRUCTIONS ON REMAND BY ENFORCING THE SETTLEMENT AGREEMENT IN A MANNER THAT REQUIRED BCI TO MAKE SETTLEMENT PAYMENTS TO APPELLEE ALLEN WITHOUT A SUBORDINATION AGREEMENT." *Page 7 
 ASSIGNMENT OF ERROR III "THE TRIAL COURT ERRED AS A MATTER OF LAW IN FINDING THAT BCI WAS OBLIGATED TO PAY THE INITIAL DOWN PAYMENT, PLUS TWO INSTALLMENT PAYMENTS, WITH INTERESTS."
 ASSIGNMENT OF ERROR IV "THE TRIAL COURT ERRED IN CALCULATING THE AMOUNT OF INTEREST ALLEGEDLY OWED."
 {¶ 11} BCI's remaining assignments of error challenge the additional actions taken by the trial court at the conclusion of the December 14, 2007, and February 14, 2008, hearings as a consequence of its determination that the subordination agreement was not commercially reasonable. Because this Court has concluded that the trial court exceeded the scope of our remand by conducting those hearings, BCI's remaining assignments of error are moot.
 {¶ 12} BCI's first assignment of error is sustained to the extent that the trial court exceeded the scope of this Court's mandate by conducting an additional evidentiary hearing on December 14, 2007, and February 14, 2008. BCI's second, third, and fourth assignments of error are moot. The judgment of the trial court is reversed, and this matter is remanded to the trial court for proceedings consistent with this opinion.
Judgment reversed and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27. *Page 8 
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellee.
 WHITMORE, J. MOORE, P. J. CONCUR *Page 1