[Cite as *Brown v. Allala*, 2014-Ohio-4917.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

LARISSA D. BROWN

    Appellant

    v.

PATRICK N. ALLALA

    Appellee

C.A. No.     27086

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    2007-08-2575

DECISION AND JOURNAL ENTRY

Dated: November 5, 2014

MOORE, Judge.

**{¶1}** Appellant, Larissa Brown, appeals the order of the Summit Court of Common Pleas, Domestic Relations Division, that temporarily reduced child support to zero. This Court affirms.

I.

**{¶2}** Ms. Brown and appellee, Patrick Allala, are the parents of a daughter. They never married, but in 2007, Mr. Allala acknowledged paternity, the couple agreed that Ms. Brown would have full custody of their daughter, and Mr. Allala was subsequently ordered to pay child support. His child support obligation increased to $536.75 in 2008. In 2011, the Child Support Enforcement Agency ("CSEA") conducted an administrative review of the support obligation and recommended a slight increase. Mr. Allala requested a hearing on the modification because he had recently lost his job when his employer declined to renew sponsorship of his H-1B work visa. The hearing officer reduced his child support obligation to $0 until Mr. Allala could obtain

employment, noting that Ms. Brown "retain[ed] the right to ask that the order be modified when [Mr. Allala] obtains his work visa allowing him to seek employment."

{¶3} Ms. Brown filed a request for judicial review of the administrative decision in the trial court. After conducting a hearing, a magistrate recommended suspending Mr. Allala's obligation to pay child support from December 1, 2011, through November 30, 2012, or until he secured employment, whichever occurred first. The trial court entered judgment on the magistrate's decision immediately, and Ms. Brown filed timely objections. The trial court overruled Ms. Brown's objections, but modified its decision to provide that Mr. Allala's child support obligation was reduced to zero until he either obtained employment or no longer resided in the United States.

{¶4} Ms. Brown appealed. This Court determined that the trial court erred by failing to incorporate a current child support worksheet into the record. *Brown v. Allala*, 9th Dist. Summit No. 26689, 2013-Ohio-3507, ¶ 10. We reversed on that basis alone, concluding that without the child support worksheet, we could not adequately review the trial court's decision. *Id.* at ¶ 10, 12. This Court declined to consider Ms. Brown's remaining assignments of error and remanded the matter for proceedings consistent with our opinion. *Id.* at ¶ 12.

{¶5} On remand, the trial court entered the same order, but noted that a child support worksheet had been completed and was attached. Ms. Brown filed another appeal, asserting five assignments of error.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED WHEN IT FAILED TO HOLD A HEARING PRIOR TO ISSUING AN ORDER OF NON-SUPPORT FOLLOWING A MANDATE FROM THIS COURT OF JUDGMENT [OF] REVERSAL AND CAUSE [*SIC*] REMAND IN APPEAL NUMBER C.A. 26689[.]

**{¶6}** Ms. Brown's first assignment of error is that the trial court disregarded this Court's mandate when it failed to conduct a hearing following the remand in her prior appeal. We disagree.

**{¶7}** The doctrine of the law of the case "limits the actions that a trial court may take on remand to the scope of the reviewing court's mandate and places a corresponding limitation on the ability of an appellant to assert error in subsequent appeals." *Allen v. Bennett*, 9th Dist. Summit No. 24124, 2008-Ohio-4554, ¶ 9. *See also Pingue v. Hyslop*, 10th Dist. Franklin No. 01AP-1000, 2002-Ohio-2879, ¶ 35. A trial court errs by conducting an evidentiary hearing on remand that exceeds the scope of an appellate court mandate. *See Allen* at ¶ 9-10. Conversely:

> It is well established that "'[a] trial court must follow the mandate of the appellate court.'" *State v. Pendergrass*, 9th Dist. Lorain No. 04CA008437, 2004-Ohio-5688 ¶ 9, quoting *Pingue v. Hyslop*, 10th Dist. Franklin No. 01AP–1000, 2002-Ohio-2879, ¶ 22. This court has held * * * "When this Court, as is its customary practice, remands a case for further proceedings, this does not necessarily mean that we order some sort of hearing to be held upon remand. Rather, this language simply designates that the case is to return to the trial court to 'take further action in accordance with applicable law.'" *Id*. at ¶ 10, quoting *Chapman v. Ohio State Dental Bd*., 33 Ohio App.3d 324, 328 (1986). Further, an appellate court may or may not specify the nature of the further proceedings, and in fact, should not do so if the trial court has the discretion as to the nature of the remand proceedings. *Id*., citing *State v. Chinn*, 2d Dist. No. 16764, 2000 WL 1458784 (Aug. 21, 1998).

*Evanich v. Bridge*, 170 Ohio App.3d 653, 2007-Ohio-1349, ¶ 18-19 (9th Dist.).

**{¶8}** In Ms. Brown's last appeal, we determined that without a child support worksheet, we could not review the trial court's decision properly. *Brown*, 2013-Ohio-3507, at ¶ 10. Accordingly, we "sustain[ed] Ms. Brown's third assignment of error and remand[ed] the matter so that the trial court [could] complete a child support worksheet and undertake the appropriate statutory analysis thereafter." *Id*. Our mandate did not require the trial court to conduct a hearing, and the trial court did not err by declining to do so.

{¶9} In the context of this assignment of error, Ms. Brown also notes that the child support worksheet now attached to the trial court's judgment inaccurately designates her as the obligor. In light of the facts that the trial court's decision is clear that Mr. Allala is actually the obligor and that decision and the worksheet are consistent in all other respects, this Court attributes the single inconsistency to a scrivener's error.

{¶10} Ms. Brown's first assignment of error is overruled.

### ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT FAILED TO ISSUE A MANDATORY MINIMUM ORDER OF SUPPORT AND BASED SUCH DETERMINATION ON FACTS NOT FOUND BY THE TRIER OF FACT[.]

### ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED BY TERMINATING AN ALIEN FATHER'S CHILD SUPPORT OBLIGATION UNTIL HE OBTAINS EMPLOYMENT OR NO LONGER LIVES IN THE UNITED STATES[.]

{¶11} It is difficult to discern the basis for Ms. Brown's second and third assignments of error from her brief, but they appear to argue that the trial court erred (1) by reducing Mr. Allala's child support obligation to zero for an improper reason and (2) by ordering zero dollars in child support when that determination was not supported by the evidence. In both respects, we review the trial court's decision for an abuse of discretion. *Staugler v. Staugler*, 160 Ohio App.3d 690, 2005-Ohio-1916, ¶ 15 (3rd Dist.).

{¶12} Under R.C. 3119.06, "in any action in which a court issues or modifies a child support order or in any other proceeding in which a court determines the amount of child support to be paid pursuant to a child support order, the court shall issue a minimum child support order requiring the obligor to pay a minimum of fifty dollars a month." Nonetheless, R.C. 3119.06 permits a trial court to order child support in amounts less than $50 per month or to require no

support "in its discretion and in appropriate circumstances." *Id.* The statute provides only one specific example of a situation in which a trial court may reduce the minimum support order: upon "the nonresidential parent's medically verified or documented physical or mental disability or institutionalization in a facility for persons with a mental illness[.]" Nonetheless, the statute emphasizes that this description is not exclusive by providing that the trial court may reduce the minimum support order under "any other circumstances considered appropriate by the court." *Id.* In other words, "R.C. 3119.06 requires a trial court to set a minimum child support order of $50.00 per month, although it gives the court discretion in appropriate circumstances to issue a lower support order, or to waive support all together." *Lynch v. Lynch*, 5th Dist. Stark No. 2004-CA-00012, 2004-Ohio-4945, ¶ 14.

{¶13} In this case, the trial court determined that Mr. Allala could not legally obtain employment without first addressing his immigration status and "decline[d] [Ms. Brown's] request to order [Mr. Allala] to work in direct violation of federal law." The child support worksheet, which is appended to the trial court's decision, reflects zero dollars of income for Mr. Allala so, for purposes of determining his child support obligation, the minimum level of support required by R.C. 3119.06 was generally required. Under the statute, however, a trial court has the discretion to enter a support award of zero dollars when the obligor has no income. *See generally Garner v. Boyd*, 5th Dist. Muskingum No. CT11-0050, 2012-Ohio-1489. The trial court did not abuse its discretion by determining that Mr. Allala's immigration status, and related inability to legally obtain employment, justified a child support obligation of zero dollars.

{¶14} Ms. Brown has also argued that the evidence did not support the trial court's determination that Mr. Allala had no income. Specifically, she has argued that the evidence did not support the trial court's conclusions that Mr. Allala's immigration status rendered him unable

to work and that he did not have any income for purposes of determining child support. We disagree.

{¶15} The administrative review process for court-ordered child support orders is set forth in R.C. 3119.63 *et seq.* and the corresponding provisions of the Ohio Administrative Code. When CSEA determines that modification is appropriate, either the obligor or obligee can request an administrative hearing within 14 days. R.C. 3119.63(B)/(E). If a modification is made after the administrative hearing, either party can request a court hearing. R.C. 3119.63(E); R.C. 3119.66. In hearing the matter, the trial court must consider the provision of health insurance and "all other factors required by law to be considered." R.C. 3119.73(A). After the hearing, the trial court may issue a revised court child support order that incorporates the change calculated by CSEA or may "determine the appropriate child support amount and, if necessary, issue a revised court child support order requiring the obligor to pay the child support amount determined by the court." R.C. 3119.70(B). This process is governed by the requirements regarding child support in general, and consequently:

> The calculation of child support is governed by R.C. Chapter 3119. Pursuant to R.C. 3119.02, in any action in which a court child support order is modified, a court or child support enforcement agency must calculate the amount of a child support obligation according to the schedules and worksheets provided in R.C. 3119.02 through R.C. 3119.24. Although the amount of child support calculated using the schedule and worksheet is "rebuttably presumed" to be the correct amount, the trial court may deviate from the amount determined if, after considering the factors and criteria set forth in R.C. 3119.23, it finds that the amount "would be unjust or inappropriate and would not be in the best interest of the child."

(Internal citations omitted.) *Rundo v. Rundo*, 11th Dist. Geauga App. No. 2013-G-3134, 2013-Ohio-4305, ¶ 16 (discussing revision to a child support obligation in the context of R.C. 3119.66). The court's responsibility is to determine an "appropriate" level of child support under

these circumstances and need not find that a change in circumstances warrants modification. *Rocky v. Rockey*, 4th Dist. Highland No. 08CA4, 2008-Ohio-6525, ¶ 29.

**{¶16}** We begin by observing that upon CSEA's administrative modification of Mr. Allala's child support obligation, it was Ms. Brown who initiated the trial court's review, and so she bore the burden of proof in the proceedings. *Compare Irish v. Irish*, 9th Dist. Lorain No. 10CA009810, 2011-Ohio-3111, ¶ 16; *Keller v. Keller*, 9th Dist. Wayne No. 04CA0084, 2005-Ohio-3302, ¶ 17, citing *Jurewicz v. Rice*, 9th Dist. Medina No. 3190-M, 2001 WL 1421855, *2 (Nov. 14, 2001). It is also helpful to remember for purposes of this discussion that although Mr. Allala proceeded pro se throughout this case, Ms. Brown has consistently been represented by counsel.

**{¶17}** The trial court's decision is based on two determinations of fact that Ms. Brown challenges: first, the conclusion that Mr. Allala's immigration status prevented him from legally earning income, and second, that Mr. Allala had zero income for purposes of the child support worksheet. Mr. Allala testified that he is a citizen of Ghana who came to the United States as a student. While obtaining his Ph.D., Mr. Allala worked at Akron Children's Hospital as a chaplain through a third-party placement. After that placement ended, Akron Children's employed him directly pursuant to an H-1B visa, which required Akron Children's to certify that his position could not be filled by a qualified United States citizen. According to Mr. Allala's testimony, once he learned that his H-1B status would not be renewed, he pursued other avenues to extend his visa before it expired, but at the time of the hearing, had met with initial denials. He testified that in addition to pursuing a visa extension directly while looking for employment, he had also approached prospective employers about their willingness to employ him under an H-1B visa without success and had inquired about returning to student visa status. According to

Mr. Allala's testimony, at the time of the hearing, none of his efforts had borne fruit. There is no evidence to the contrary in the record.

{¶18} Ms. Brown maintains also that the evidence supports the inference that Mr. Allala does have income, contrary to the trial court's determination. For example, she points to Mr. Allala's testimony that he owns a vehicle, a 1998 Isuzu Rodeo, which is subject to a loan. Mr. Allala testified, however, that he was in default of repaying the loan. She also points to his testimony that he had $2,000 remaining in a deferred compensation account after earlier withdrawals and maintained an apartment with monthly rent of $600. For his part, Mr. Allala testified that he had become dependent on the generosity of friends in order to purchase food and was, at one point, in danger of losing his residence. He explained his financial position as follows:

> Friends support me with groceries and a check here and there to pay my bills. And I'm still in – in serious financial crisis. My account was closed because there was nothing coming in, and I was having no job that I need to pay off [*sic*].

> I have taken personal loans from friends here and there so I can survive. I go days without food. My bills are not paid. I have a shutoff notice from the gas and then from my utility bills. This week is my last week for my gas utility or my gas supply to be cut off. So I – I really am [having a] serious financial problem.

{¶19} Despite Mr. Allala's suggestion that he receives money through gifts or loans from acquaintances, he was not cross-examined as to the amount or frequency of such payments. Ms. Brown has emphasized Mr. Allala's physical wellbeing, consistent record of employment in the past, and steady income before his employment ended. These facts, however, do not address the issue of Mr. Allala's present ability to pay child support. Consequently, the record contains no information beyond Mr. Allala's own assertion that he is in "financial crisis" and surviving based on the generosity of others. Ms. Brown, on the other hand, testified that she earned approximately $89,000 per year as an employee of the Akron Public Schools, which also

provided health insurance for her and her daughter at minimal cost. Ms. Brown stated that she pays $5,000 per year in Montessori tuition plus $300 per month for before and after care. She testified that her daughter's asthma medications cost $45 per month, and she noted that she keeps her daughter regularly involved in multiple extracurricular activities. She did not testify about any other expenses.

{¶20} Ms. Brown's appellate brief points out the fact that Mr. Allala did not present expert testimony regarding his immigration status, but we reiterate that the burden of proof in this proceeding fell to her. The record from the hearing contains minimal financial information and does not establish that Mr. Allala had other income. Based on the record before us, therefore, we cannot conclude that the trial court abused its discretion by determining that Mr. Allala was unable to work due to his immigration status and that Mr. Allala had no income. Ms. Brown's second and third assignments of error are overruled.

## ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED WHEN IT FAILED TO FIND [MR. ALLALA] WAS VOLUNTARILY UNEMPLOYED AND FAILED TO IMPUTE WAGES TO [MR. ALLALA] FOR THE PURPOSES OF CALCULATING CHILD SUPPORT[.]

{¶21} Ms. Brown's fourth assignment of error argues that the trial court erred when it failed to conclude that Mr. Allala was voluntarily unemployed. We disagree.

{¶22} "In determining the appropriate level of child support, a trial court must calculate the gross income of the parents. When a parent is unemployed, income includes potential income that may be imputed to the parent by the trial court." *Bajzer v. Bajzer*, 9th Dist. Summit No. 25635, 2012-Ohio-252, ¶ 11, citing R.C. 3119.01(C)(5)/(11) and R.C. 3119.05. A trial court must expressly find that a parent is voluntarily underemployed or unemployed before imputing income. *Collins v. Collins*, 9th Dist. Wayne No. 10CA0004, 2011-Ohio-2087, ¶ 36.

"[W]hen a court examines the earning capacity of a parent who is voluntarily unemployed or underemployed, it does so with a view toward imputing a specific sum of income to that parent. In turn, that sum will be combined with other gross income to arrive at a total gross income figure which will be used for the child support calculation." *Id*. at ¶ 18.

{¶23} Voluntary unemployment is a matter to be determined by the trial court based on the unique facts and circumstances of each case. *Rock v. Cabral*, 67 Ohio St.3d 108, syllabus (1993). It is not necessary that a parent acted with the intention to evade his or her child support obligation, and "[t]he parent's subjective motivations for being voluntarily unemployed or underemployed play no part in the determination[.]" *Id.* at 111. Nonetheless, the Ohio Supreme Court has observed that "voluntarily" means "[d]one by design or intention, intentional, proposed, intended, or not accidental. Intentionally and without coercion." *Id*. at 111 fn.2, quoting Black's Law Dictionary (6 Ed.1990) 1575. The burden of proving voluntary unemployment is on the parent who claims that the other is voluntarily unemployed. *Knouff v. Walsh-Stewart*, 9th Dist. Wayne No. 09CA0075, 2010-Ohio-4063, ¶ 27, citing *Groves v. Groves*, 12th Dist. Clermont No. CA2008-06-059, 2009-Ohio-931, ¶ 9. This Court reviews a trial court's determination regarding voluntary unemployment for an abuse of discretion. *Rock* at syllabus.

{¶24} Mr. Allala's employment and immigration status history is not disputed, and because it is the basis for Ms. Brown's argument, a brief review is instructive. Mr. Allala came to the United States in 1998 to pursue graduate studies at the University of Akron on an F1 student visa. He was employed on a one-year contract at Archbishop Hoban High School in 2001 on an R1 religious worker visa. In 2002, Mr. Allala's status reverted to his F1 student visa when his contract ended, and he provided limited on-call counseling services at Akron General Hospital for a stipend in connection with his studies. In 2003, Mr. Allala was hired on an R1

religious worker visa by Lutheran Chaplaincy Services and placed at Akron Children's Hospital. He worked in that capacity until 2005, when his R1 visa expired and the sponsoring employer made an error in the renewal process. Akron Children's Hospital decided to hire him directly, however, and in February 2006, he began employment in his previous capacity as an employee of the hospital under an H-1B visa. In the interim between losing his R1 status and gaining employment with Akron Children's, Mr. Allala reverted again to his F1 student status and performed some contract work for the University of Akron related to his studies. Akron Children's employed Mr. Allala from 2006 through most of 2011. Mr. Allala testified that, at that point, his H-1B visa was nearing expiration, and Akron Children's determined that it would not reapply for the H-1B visa on Mr. Allala's behalf.

{¶25} Ms. Brown's position is that Mr. Allala's employment history demonstrates that he knows how to maintain his work eligibility over the long term; that he should have anticipated that Akron Children's might refuse to recertify his H-1B visa; and that it was his responsibility to solidify his immigration status before the problem arose. She also maintains that Mr. Allala did little to secure a new visa after losing his job at Akron Children's. Ms. Brown's position, however, appears to be based on conjecture rather than evidence from the trial record. As stated above, the burden of proving that Mr. Allala is voluntarily unemployed fell to Ms. Brown. *See Knouff* at ¶ 27. Although she cross-examined Mr. Allala about his employment history, she did not elicit any evidence that might have provided the perspective on his testimony that she advocates. Consequently, the trial court made its decision based on the testimony of Mr. Allala that he could not have anticipated the loss of his employment and that although he had pursued every avenue known to him of obtaining a new visa, he had not met with success at the time of the hearing. He testified specifically that the University of Akron had denied him F1 student

status because he had finished all of his graduate coursework. Similarly, he testified that R1 status was unavailable to him because it had to be initiated by an employer.

{¶26} Considering the facts and circumstances unique to this case, and with Ms. Brown's burden of proof in mind, we conclude that the trial court did not abuse its discretion by failing to find that Mr. Allala was voluntarily unemployed. Ms. Brown's fourth assignment of error is overruled.

### ASSIGNMENT OF ERROR V

> THE TRIAL COURT ERRED WHEN IT OVERRULED [MS. BROWN'S] OBJECTIONS TO THE MAGISTRATE'S DECISION, YET ISSUED A JUDGMENT ENTRY CONTRARY TO THE MAGISTRATE'S DECISION, MADE ADDITIONAL FINDINGS WHEN ONLY THE MAGISTRATE HAD THE OPPORTUNITY TO HEAR THE EVIDENCE IN THE CASE AND RELIED UPON [MR. ALLALA'S] SELF-SERVING LAY TESTIMONY IN THE TRANSCRIPTS ON ISSUES REQUIRING AN EXPERT OPINION[.]

{¶27} Ms. Brown's final assignment of error sets forth two different arguments: (1) that the trial court erred by overruling her objections, but modifying the magistrate's decision nonetheless, and (2) that the trial court improperly considered Mr. Allala's lay testimony when expert evidence was necessary to explain his immigration status.

{¶28} Civ.R. 53(D)(4)(b) explains that when a trial court considers a magistrate's decision, it may adopt or reject it, in whole or in part, "with or without modification." *See also* Civ.R. 53(D)(4)(d) (requiring an independent review with respect to objections). By its plain terms, therefore, Civ.R. 53 does not limit a trial court's ability to enter a judgment that differs from the magistrate's decision upon conducting an independent review. *Peskind v. Peskind*, 8th Dist. Cuyahoga No. 94740, 2010-Ohio-5146, ¶ 16. As this Court has explained:

> The independent review that is required of the trial court has two components: (1) whether, with respect to the objected matters, the magistrate properly determined the factual issues before it, and (2) whether the magistrate appropriately applied the law to those factual determinations. Even if the evidence from the

proceedings before a magistrate is not before the trial court or is not contested, the trial court must conduct an independent review of the magistrate's application of the law to the facts to the extent that it is the subject of the objections. In that situation, a trial court accepts the magistrate's findings of fact, but "has the authority to determine whether the magistrate's findings of fact are sufficient to support the conclusions of law made, and to reach a different legal conclusion as long as that conclusion is supported by the magistrate's findings of fact." Civ.R. 53 contemplates that a trial court may, within its discretion, conduct a review that exceeds that specifically required.

(Internal citations omitted.) *Lakota v. Lakota*, 9th Dist. Medina No. 10CA0122-M, 2012-Ohio-2555, ¶ 14. *See also State ex rel Dewine v. Ashworth*, 4th Dist. Lawrence No. 11CA16, 2012-Ohio-5632, ¶ 36-38 (explaining that because the trial court is the ultimate trier of fact, it may reject credibility determinations made by a magistrate and modify the magistrate's decision in entering judgment).

{¶29} This Court has already concluded that the substance of the trial court's decision was not an abuse of discretion. By the same token, the trial court did not err in modifying the terms of the magistrate's decision when it conducted its independent review. Indeed, Civ.R. 53(D)(4) expressly gives the trial court the flexibility to do so. Ms. Brown's fifth assignment of error is overruled in this respect.

{¶30} Ms. Brown has also argued that the trial court erred by relying on Mr. Allala's lay testimony about his immigration status. "Under Civ.R. 53(D)(3)(b)(iv), a party forfeits all but plain error with respect to the appeal of any finding of fact or legal conclusion to which no objection is made in the trial court." *Lakota* at ¶ 9. Although Ms. Brown has framed this argument in terms of the trial court's action on the magistrate's decision, her real complaint appears to be with the magistrate's decision to allow the testimony at issue. Ms. Brown did not object to the magistrate's decision in this respect. She has forfeited all but plain error, which she

has not argued in this Court. *See Hendy v. Wright*, 9th Dist. Summit No. 26422, 2013-Ohio-5786, ¶ 14. Her fifth assignment of error is overruled in this respect as well.

**{¶31}** Ms. Brown's fifth assignment of error is overruled.

### III.

**{¶32}** Ms. Brown's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CARLA MOORE
FOR THE COURT

HENSAL, P. J.
CARR, J.
CONCUR.


APPEARANCES:

LYNDA HARVEY WILLIAMS and AVIVA L. WILCHER, Attorneys at Law, for Appellant.

PATRICK N. ALLALA, pro se, Appellee.