[Cite as *Carpenter v. Carpenter*, 2019-Ohio-4709.]

COURT OF APPEALS
TUSCARWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| QUINTIN CARPENTER | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2019 AP 04 0013 |
| JESSICA CARPENTER, ET AL | : |  |
|  | : |  |
| Defendant-Appellant | : | OPINION |


CHARACTER OF PROCEEDING:    Civil appeal from the Tuscarawas County Court of Common Pleas, Case No. 2016 TC 12 0521


JUDGMENT:    Affirmed


DATE OF JUDGMENT ENTRY:    November 14, 2019


APPEARANCES:

For Plaintiff-Appellee             For Defendant-Appellant

ERICK BAUER                    DAN GUINN
122 North Broadway Street        P.O. Box 804
New Philadelphia, OH 44663      New Philadelphia, OH 44663

*Gwin, P.J.*

{¶1} Mother appeals the March 22, 2019 judgment entry of the Tuscarawas County Court of Common Pleas overruling her objections to the magistrate's decision naming Father the residential and custodial parent of the parties' two children.

*Facts & Procedural History*

{¶2} Mother and Father were married on September 17, 2011 and had two children, Q.C., born on February 20, 2012, and C.C., born on November 9, 2013. Father filed a complaint for divorce on December 28, 2016. On December 15, 2017, the parties entered into a separation agreement and a shared parenting plan. Pursuant to the shared parenting agreement, Mother and Father each were designated residential and custodial parent while the children were in his or her physical custody. The parties agreed Father would pay Mother $670 per month in child support.

{¶3} On July 5, 2018, Mother filed a motion to modify, seeking to terminate the shared parenting agreement and terminate the visitation order of Elizabeth Board ("Board"), the paternal grandmother of the children. On September 5, 2018, Father filed his motion to terminate the shared parenting plan and motion for reallocation of parental rights and responsibilities. Father filed a motion to modify child support on October 10, 2018.

{¶4} The magistrate held a hearing on the motions on October 11, 2018 and October 18, 2018. Rae Ann Bowden ("Bowden") is a kindergarten teacher. Q.C. was in her class last year. Bowden stated that from February to May of 2018, Q.C. improved and did well in class. Melinda Limbacher ("Limbacher") is Q.C.'s first grade teacher. Limbacher testified Q.C. sometimes lacks focus, but his grades are good. Limbacher

does not know if his focus issues are related to which parent he is with because she does not know who he is with on a given day.

{¶5} Father was incarcerated for six months, from February to August of 2018. Father stated he was in prison for possession of firearms that Mother purchased for him. Father is currently on probation, has travel restrictions, and has to submit to random drug testing. Mother also is on probation due to a criminal case. She testified she is on probation for another eighteen months and has travel restrictions. While Father was in prison, per order of the court, Board exercised Father's parenting time with the children. Board no longer has parenting time since Father is out of prison, but does have second right of refusal. Both Mother and Father testified they do not believe they are capable of shared parenting.

{¶6} Mother is employed at Union Country Club. She has flexibility with her schedule, makes $12 per hour, and normally works twenty to twenty-five hours per week, although Mother testified they could give her more hours. She receives no benefits or insurance. Mother rents a two-room apartment. Mother testified her paramour does not live with her, even though she put two adults on her affidavit of income and expenses form.

{¶7} Father is employed at Worth Carter Construction at $8.30 per hour working approximately thirty to forty hours per week. Father makes less now than prior to when he went to prison and his child support is still the same. Prior to going to prison, Father worked as a mechanic, making $21 per hour. Father testified he has looked for other employment as a mechanic, including at car dealerships and has had several interviews. However, Father has been unable to obtain another job due to his felony conviction.

Mother does not believe Father makes $8.30 per hour because concrete workers do not make less than minimum wage. Mother also thinks Father has other sources of income, such as fixing vehicles.

{¶8} Mother lists her concerns with Father as follows: C.C. came home with a hickey on her neck, when the children come home from Father's they are tired, Father has anger issues, Father does not get the children's homework done, several weeks ago C.C. had scratches on her forehead and nose and Q.C. had a gash on his back when Father took them to a construction site, C.C. had a urinary tract infection, and Father puts the children in clothes that are two sizes too big. Mother called the police when C.C. had the urinary tract infection and when the children had hickeys.

{¶9} Father testified the children have never returned home from his house with a hickey. Father has photographs of the children getting bumps and bruises while with Mother, but believes children get bumps, bruises, and scrapes and parents cannot protect children from everything. Father thinks these are minor injuries. Father stated he took C.C. to work with him for approximately twenty minutes. C.C. was playing in a pile of dirt and fell. C.C. was not unsupervised and the construction work was done for the day when she was playing.

{¶10} Mother testified she heard Father screaming at both of the children loudly when she went to pick them up. Father denied yelling at the children and stated Mother's testimony in that regard is not truthful. Mother stated there were issues with Father getting the children's homework done. However, Mother also testified she did not always send the homework when the children went to Father's. Father testified he makes sure

everything that comes home with the children gets done, but there have been some instances where Mother has not provided him with the homework.

{¶11} Mother believes Father puts the children in clothes that are two sizes too big. Board does not believe Father is dressing the children inappropriately. Father testified the clothes he purchased for the children never fall off them, but there have been instances where he bought clothes a size bigger so the children can wear them longer.

{¶12} Father and Mother have never been able to agree on a baby-sitter. As to C.C.'s preschool, Mother stated she did not have a choice as to which Head Start location she enrolled her in. However, Mother also testified she asked C.C. which preschool she would like to attend, and C.C. wanted to ride the bus with her friends to the preschool location Mother chose. Board testified that when she was told she could not use the baby-sitters she was using because of Mother's abuse allegations, she found a daycare next to a Head Start preschool location where they would walk C.C. to the daycare; however, when Board informed Mother of this, Board received no response. Father testified if C.C. were to attend the preschool next to the daycare, no one would have to leave work at lunch to transport her from school to daycare. Father stated he attempted to discuss this with Mother, but Mother told him no.

{¶13} Mother believes Board fails to take care of the children when they were and are in her care. Board testified that though Mother has accused her multiple times, Board has never bathed the children together or spanked the children. Board contacted Mother when Board believed C.C. had a urinary tract infection. Board testified Mother was "very disagreeable" and did not want Board to take C.C. to the doctor. Board identified several instances while Father was in prison when Mother did not provide Board with her work

schedule.  Board is concerned about what Mother tells the children.  Board stated Mother did not share information with her and it was very difficult to schedule things and they still have difficulty finding and keeping daycare providers.

{¶14}  Mother testified to an ongoing molestation investigation regarding the childcare provider Board had for the children.  Mother does not know the status of the investigation with the police and/or DJFS.  Board testified no one has contacted her about any allegations of abuse.  Board testified that on October 6, 2018, when Mother and her paramour came to pick up the children, Mother smelled like alcohol.  Board offered to drive them home, but Mother refused, and they walked home.  Mother testified she was not drinking and it was a nice day to walk home.

{¶15}  Mother testified she does not believe there are communication issues between her and Father, as they text back and forth without issue.  However, Mother also testified there are issues with scheduling because although she gives Father her work schedule, he does not give her his work schedule.  Father stated his and Mother's communication ability is inconsistent.  Father understands they are court-ordered to use the Family Wizard program to communicate, but he does not use it much because Mother does not have a subscription to the program.

{¶16}  Mother stated she has no problems taking the children to school and has childcare set up for them.  Mother testified the children are both doing well in school.  During the first day of testimony, Mother stated she was hoping to maybe move to Gnadenhutten or a better school district for her children because her son gets bullied a lot.  However, during the second day of testimony, Mother stated she had no plans to move.

{¶17} Mother has the children in counseling, but is looking for a different counselor. Mother believes it is in the best interest of the children for Father to have parenting time every other week-end and one day during the week. Mother testified she is trying to limit Father's parenting time with this proposed schedule. Father fears if Mother is the custodial parent, she is going to do everything she can to keep the children away from him because she has stated she wants to limit his time with the children and because she went out of her way to make sure Father could not exercise his right of first refusal on multiple occasions. Father testified he would like to cooperate on parenting. Father would like a week-to-week schedule and, even on this schedule, Father would let Mother have the children in the morning to take them to school during his week. Father does not believe Mother honors and facilitates his relationship with the children and does not believe he has ever been included in making decisions for the children despite the shared parenting agreement. Father cites as examples the fact that Mother removed him from the paperwork at the children's school and the fact that he did not know the children were in counseling until he heard Mother's testimony at the hearing.

{¶18} Mother admitted she has been found guilty of violating court orders twice in this case: once for failing to honor Father's right of first refusal by not giving Father the dates she was working and once for refusing to give Board the children for a week-end after being specifically ordered to do so. Father testified Mother is not good at following court orders, as he has been in court four times since he got out of prison in August. Father stated he would facilitate court orders if he were the custodial parent.

{¶19} The magistrate issued a judgment entry on November 13, 2018, finding both parties agreed their shared parenting plan should be terminated. The magistrate

reviewed the factors in R.C. 3109.04(F) as follows: (a) Mother and Father each want to be named the custodial parent of the children; (b) the magistrate did not conduct a child interview; (c) both Mother and Father have felony convictions; (d) one child has some occasional difficulty focusing in school, but the teachers have not correlated the behavior with parenting time; at the first hearing, Mother stated she wanted to change school systems, but at the second hearing Mother stated she had no intention of moving the child out of the New Philadelphia School System; Mother admits she did not always send the homework with the children to Father's home; (e) all the parties are healthy, but there is an investigation regarding possible molestation of the children at a former babysitter's home; the children are in counseling, but Mother did not inform Father; (f) Father is more likely to facilitate the court-ordered parenting time, as Mother has been found in contempt twice for failing to follow parenting time orders; (g) Father's child support arrearage is $3,273.73, some of which was due to non-payment while he was incarcerated for six months; CSEA filed a notice on October 29, 2018 indicating Father overpaid $1,770.73; (h) one former child care provider is under investigation; (i) Mother has willfully interfered with parenting time on at least two occasions; and (j) neither party indicated any plans to relocate out of Ohio.

{¶20} The magistrate additionally made the following findings: Mother's description of a "gash" on one child's back is an exaggeration as it is a dot-like mark; Mother's description of Father dressing the children in clothes "falling off them" is an exaggeration; Mother earns $12 per hour, 20-25 hours per week and it is appropriate to impute minimum wage full-time income to her; Father earns $8.30 per hour, 30-40 hours per week and is unable to find employment as a mechanic due to his felony conviction;

Mother has called the police several times regarding marks on the children and once when a child had a urinary tract infection; the magistrate is concerned that Mother's testimony is inconsistent; Mother has failed to follow prior court orders; Mother admits to wanting to limit Father's time with the children; Mother exaggerates normal childhood scrapes; the magistrate recognizes Mother is actively involved with the children; Mother alleges Father fails to properly supervise the children and cites one occasion where the four year old fell and scraped her face; and the magistrate found bumps and scrapes are normal and do not constitute a failure to properly supervise.  The magistrate also imputed minimum wage, full-time income to Mother and minimum wage, full-time income to Father.

{¶21}  The magistrate made the following recommendations:  the shared parenting plan be terminated; Father should be named the residential parent and legal custodian of the children; the parties should follow an alternating week parenting time schedule with the parent who does not have the children for the week having a mid-week visit one evening; the children should remain in the New Philadelphia School District as long as one parent remains in the district; and while Mother is the obligor for child support purposes since Father is the residential and custodial parent, she does not have to pay any child support to Father because of their equal incomes.

{¶22}  Mother filed initial objections to the magistrate's decision on November 16, 2018 and supplemental objections on January 25, 2019.  Mother argued: the magistrate erred in naming Father the residential parent and legal custodian of the children; the magistrate erred with regards to failing to find Father in contempt for failing to pay child support while he was incarcerated; the magistrate erred with regards to determining

income for both parties; the magistrate erred with regards to not splitting the tax exemption; and the magistrate erred with regards to not awarding her attorney fees. Father filed a response to Mother's objections on February 15, 2019. Mother filed a reply on February 27, 2019.

{¶23} The trial court issued a judgment entry on March 22, 2019. The trial court found the magistrate's recommendations were supported by the evidence and were not an abuse of discretion. The trial court thus adopted the magistrate's recommendations, except with the modification that Father shall be entitled to claim Q.C. for tax purposes and Mother shall be entitled to claim C.C. for tax purposes because both parents will have similar parenting time and income.

{¶24} Mother appeals the judgment entry of the Tuscarawas Court of Common Pleas and assigns the following as error:

{¶25} "I. THE TRIAL COURT ERRED IN DETERMINING THAT THE FATHER SHOULD BE NAMED THE RESIDENTIAL PARENT AND LEGAL CUSTODIAN OF THE MINOR CHILDREN.

{¶26} "II. THE COURT ERRED IN DETERMINING THE INCOME OF THE PARTIES."

I.

{¶27} In her first assignment of error, Mother contends the trial court committed error in determining it is in the best interest of the children for Father to be named the residential and custodial parent for the children.

{¶28} On appeal, our standard of review in assessing the disposition of child custody matters is that of abuse of discretion. *Miller v. Miller*, 37 Ohio St.3d 71, 523

N.E.2d 846 (1988). In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983). Furthermore, as an appellate court reviewing evidence in custody matters, we do not function as fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent, and credible evidence upon which the fact finder could base his or her judgment. *Dinger v. Dinger*, 5th Dist. Stark No. 2001CA00039, 2001-Ohio-1386. Because custody issues are some of the most difficult and agonizing decisions a trial judge must make, he or she must have wide latitude in considering all the evidence. *Davis v. Flickinger*, 77 Ohio St.3d 415, 674 N.E.2d 1159 (1997).

{¶29} In addressing a motion for termination of shared parenting plan, a trial court must determine (1) whether a change in circumstances has occurred; (2) whether termination or modification is in the children's best interests; and (3) whether the advantage to the child resulting from the termination or modification outweighs any potential harm. *Ford v. Ford*, 5th Dist. Tuscarawas No. 2012 AP 03 0025, 2012-Ohio-5454.

{¶30} R.C. 3109.04(F) states, in determining the best interest of a child, the court shall consider all relevant factors, including but not limited to: (a) the wishes of the parents; (b) if the court has interviewed the child in chambers, the child's wishes and concerns; (c) the child's interaction with parents, siblings, and any other person who may significantly affect the child's best interest; (d) the child's adjustment to home, school, and community; (e) the mental and physical health of the persons involved in the situation; (f)

the parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights; (g) whether either parent has failed to make all child support payments; (h) whether either parent has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being abused or neglected; (i) whether one of the parents continuously and willfully denied the other parent's right to parenting time; and (j) whether either parent is planning to establish a residence outside the state.

{¶31} No one factor is dispositive. *Baker-Chaney v. Chaney*, 5th Dist. Holmes No. 16CA005, 2017-Ohio-5548. Rather, the trial court has discretion to weigh any and all relevant factors. *Id.* Absent evidence to the contrary, an appellate court will presume the trial court considered all of the relevant factors. *Id.*

{¶32} Mother contends the children are fine with her, but are not fine with Father and/or Board. Mother points to her testimony that Father did not provide the children with proper clothing, did not complete homework with the children, is unable to pay attention to the basic details of parenting, and chooses to blame everything on Mother. Mother essentially argues the trial court did not properly consider her testimony. However, as evidenced from the judgment entry, the trial court did consider Mother's testimony, but found her testimony was inconsistent and an exaggeration of the circumstances. It is well established that the trial court, as the ultimate fact finder and issue resolver, is free to believe all, part, or none of the testimony of each witness. *State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992).

{¶33} Mother also argues it is an abuse of discretion to name Father as the custodial parent because he was incarcerated for a significant period of time during the

pendency of the case and the children have been in the care of Mother without any issues. We find no abuse of discretion in the trial court's determination.

{¶34} The magistrate specifically noted she considered both Father and Mother's felony criminal convictions in her determination of the best interests of the children. The magistrate also stated she specifically considered and weighed the fact that Mother has been so actively involved with the children. Though Mother was actively involved with the children, she also failed to follow court orders twice in this case, and stated she sought to limit Father's time with the children. Her testimony as to homework and moving was inconsistent, and her allegations of Father's failure to supervise and inability to care for the basic needs of the children were rebutted by Father's testimony and the photographic evidence. The trial court was in the best position to conduct the analysis of the best interest factors and we cannot find anything in the record to suggest the trial court's review was improper. See *Ream v. Ream*, 5th Dist. Licking No. 02-CA-000071, 2003-Ohio-2144; *Stalnaker v. Stalnaker*, 5th Dist. Stark No. 2000CA00099, 2000 WL 1785734 (Dec. 4, 2000). In this case, the trial court considered the factors enumerated in R.C. 3109.04(F). R.C. 3109.04(F) provides the court with discretion to weigh the relevant factors and determine how those factors apply to the child's best interests. *Wooten v. Casey*, 4th Dist. Gallia No. 03CA15, 2004-Ohio-55.

{¶35} The magistrate thoroughly analyzed the factors and the findings were supported by the record. We emphasize that in proceedings involving the custody and welfare of children, the power of the trial court to exercise discretion is particularly important. *Thompson v. Thompson*, 31 Ohio App.3d 254, 511 N.E.2d 412 (4th Dist. 1981), citing *Trickey v. Trickey*, 158 Ohio St. 9, 106 N.E.2d 772 (1952). Upon review of

the record, we find the magistrate and judge duly considered the statutory "best interest" factors, and the court's decision that it is in the best interest of the children to name Father the residential and custodial parent is supported by a substantial amount of competent and credible evidence and was not an abuse of discretion.

{¶36} Mother's first assignment of error is overruled.

II.

{¶37} In her second assignment of error, Mother contends the trial court erred in computing the income of the parties for child support purposes. The abuse of discretion standard is the appropriate standard of review in matters concerning child support. *Booth v. Booth*, 44 Ohio St.3d 142, 541 N.E.2d 1028 (1989). In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983). Furthermore, as an appellate court, we are not the trier of fact. Our role is to determine whether there is relevant, competent, and credible evidence upon which the factfinder could base his or her judgment. *Cross Truck v. Jeffries*, 5th Dist. Stark No. CA-5758, 1982 WL 2911 (Feb. 10, 1982).

{¶38} The original shared parenting plan ordered Father to pay Mother child support. Upon termination of the shared parenting plan, the magistrate named Father as the residential parent and legal custodian. The magistrate recalculated the parties' child support obligations to reflect Father as the primary caregiver and Mother as the child support obligor, but did not order Mother to pay any support based upon her income.

{¶39} The statutory child support computation worksheet includes space for the assessment of each parent's income, which is defined, for a parent who is unemployed

or underemployed as "the sum of the gross income of the parent and any potential income of the parent." R.C. 3119.01(C)(5)(b). Whether a parent is "voluntarily underemployed" and the amount of potential income to be imputed to a child support obligor are matters to be determined by the trial court based upon the facts and circumstances of each case.

{¶40} "In deciding if an individual is voluntarily under-employed or unemployed, the court must determine not only whether the change was voluntary, but also whether it was made with due regard to obligor's income-producing abilities and his or her duty to provide for the continuing needs of the child." *G.P. v. L.M.*, 5th Dist. Morrow No. 16CA0005, 2016-Ohio-7955. The decision to impute income to a parent is within the trial court's sound discretion. *Id.* The parent claiming that his or her former spouse is voluntarily under-employed has the burden of proof. *In re B.S.*, 9th Dist. Summit No. 24605, 2009-Ohio-4660. Among the factors a trial court should consider are the parent's prior employment experience, the parent's education, the availability of employment where the parent resides, the prevailing wage where the parent resides, and whether there is evidence the parent has the ability to earn the imputed income. R.C. 31109.01(C)(11).

{¶41} Mother contends her income should not have been imputed at 40 hours per week, as when the parties divorced, her income was set at $16,952 and there was no testimony presented she is able to work more or that she has training in any field in which she could earn more income.

{¶42} We find no abuse of discretion in the trial court's adopting the magistrate's calculation of Mother's income. Mother testified she makes $12 per hour and works twenty-five hours per week. The magistrate stated in her decision that she imputed

Mother's gross income at minimum wage full-time, which would be $17,784. However, in the child support worksheet, the magistrate listed Mother's yearly gross income from employment as $15,600, which represents twenty-five hours per week at $12 per hour, with an additional $1,664 in other income, for a total of $17,264 annually. Utilizing even the higher figure of $17,784, at Mother's hourly income of $12 per hour, she would have to work 28.5 hours per week to attain this figure. Despite Mother's argument that there was no testimony presented that she could work more hours, after Mother testified she normally works twenty to twenty-five hours per week, counsel asked, and "Is that the max they'll give you?" Mother stated, "they can give me more, yes." Upon review, we find the record provides competent and credible evidence to support the trial court's determination of Mother's income and the finding does not constitute an abuse of discretion.

{¶43} Mother also argues the trial court committed error in determining Father's income, as he has training in the mechanical field and was making $21 per hour prior to his incarceration and thus $21 per hour and $42,000 per year should be imputed to him, as he has training in the field and has shown he has been able to earn more income than he is now.

{¶44} Upon review, we find there is competent and credible evidence to support the trial court's finding of $17,264 per year as Father's income and that finding does not constitute an abuse of discretion. Father testified he is employed at Worth Carter Construction making $8.30 per hour and working approximately thirty to forty hours per week. Prior to going to prison, Father worked as a mechanic, making $21 per hour. Father stated he has looked for other employment as a mechanic. Specifically, Father testified he was looking to multiple car dealerships in the area, applied at Gradall, and

had an interview as a maintenance mechanic at Frito-Lay, however, he has been unable to obtain another job due to his felony conviction.

{¶45} Mother cites her testimony that she believes Father has other sources of income, such as fixing vehicles, in support of her argument. However, Father testified he does not have any other source of income and does not earn income fixing vehicles. The trial court, as the ultimate fact finder and issue resolver, is free to believe all, part, or none of the testimony of each witness. *State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). Mother contends that since she is also a convicted felon, it is unfair to take that factor into consideration when determining Father's income. However, as noted above, the decision to impute income to a parent is within the trial court's sound discretion. Father specifically testified he has interviewed for mechanic positions, but has been unable to obtain them because of his felony conviction. Mother did not testify, nor present any evidence, that her felony conviction impacted her income and/or availability of employment for her. Thus, we find no abuse of discretion in the trial court's determination.

{¶46} Mother's second assignment of error is overruled.

{¶47}  Based on the foregoing, Mother's assignments of error are overruled.

{¶48}   The March 22, 2019 judgment entry of the Tuscarawas County Court of Common Pleas is affirmed.

By Gwin, P.J.,

Hoffman, J., and

Delaney, J., concur