[Cite as *Petrikas v. Petrikas*, 2021-Ohio-3577.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| ALBERT PETRIKAS | : | JUDGES: |
| | : | |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellant | : | Hon. John W. Wise, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 20CA38 |
| | : | |
| ROBYN PETRIKAS | : | |
| | : | |
| | : | |
| Defendant-Appellee | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Fairfield County Court
of Common Pleas, Domestic Relations
Division, Case No. 18DS163

JUDGMENT:      AFFIRMED

DATE OF JUDGMENT ENTRY:      October 4, 2021

APPEARANCES:

For Plaintiff-Appellant:
RYAN SHEPLER
Kernen & Shepler, LLC
158 East Main St.
P.O. Box 388
Logan, OH 43138-0388

For Defendant-Appellee:
ROGER WEAVER
25 E. Waterloo St.
Canal Winchester, OH 43110

For CSEA:
PATRICK WELSH
239 W. Main St.
Lancaster, OH 43130

*Delaney, J.*

{¶1}  Plaintiff-appellant Albert Petrikas ("Father") appeals from the November 30, 2020 Judgment Entry on Objections to Magistrate Decision of the Fairfield County Court of Common Pleas, Domestic Relations Division. Defendant-appellee Robyn Petrikas ("Mother") did not appear in this appeal.

## FACTS AND PROCEDURAL HISTORY

{¶2} Father and Mother were married in 2010. One child was born of the marriage [Son, DOB 2/14/11], and the parties also had another child together born prior to the marriage [Daughter, DOB 8/31/07].

### The original child support deviation in the Decree of Dissolution

{¶3}  The parties terminated the marriage by dissolution on October 9, 2018, and entered a shared parenting plan. Mother was residential parent. Although the parties intended the plan to reflect a 50/50 parenting schedule, Father had the children every Monday and Tuesday from 3:00 p.m. until 7:00 p.m. and every other weekend, from 3:00 p.m. Friday through Monday morning. Father and Mother both testified that overnight visits were difficult due to Father's work schedule because he had to be at work very early in the morning.

{¶4}  At the time of the dissolution, Mother was employed by the Columbus City Schools as a teacher and Father worked at UPS.  Mother's annual salary was around $80,000 and Father's was around $70,000.  In light of the shared-parenting schedule, the parties agreed to a child support deviation: Father paid $75 per month in support.

{¶5} The Decree of Dissolution indicated Father would exercise extended parenting time beyond what is contemplated by the Ohio Child Support Guidelines pursuant to R.C. 3113.215(B)(3)(d).

{¶6} The parties acknowledged the child support was a downward deviation from the Child Support Guidelines but agreed the deviation was in the children's best interest in light of Father's additional parenting time.

**Mother requests administrative review and more support is ordered**

{¶7} On or around September 4, 2019, Mother requested an administrative review of the child support order by submitting the following form, a "JFS 01849,"stating in pertinent part:

> It has been **less** than 36 months since the date of the most recent child support order. I have marked the appropriate circumstance that has changed and submitted the required documentation with this request.
>
> * * * *.
>
> 2. I am * * * unemployed or laid off beyond the parent's control for thirty consecutive days. This does not include seasonal employment. **Documentation required and attached.**
>
> * * * *.

(Emphasis in original.)

The documentation attached by Mother included, e.g, correspondence regarding her resignation from Columbus City Schools on September 3, 2019. Mother resigned rather than face termination due to criminal charges of child endangering and disorderly

conduct. A letter from Licking County Municipal Court stated Mother was charged with child endangering and disorderly conduct but was in good standing in the court's diversion program; upon successful completion of the program, the charges would be "dismissed and expunged off her record" on May 22, 2020.

{¶8} Mother also documented a short-term disability from September 2, 2019 through December 16, 2019.

{¶9} On October 22, 2019, the Fairfield County Child Support Enforcement Agency (CSEA) issued an Administrative Adjustment Recommendation that recommended child support should be $970.54 per month payable from Father to Mother.

{¶10} Father objected to the recommendation of CSEA on the bases that he had shared parenting and did not agree with Mother's income figure.

### Evidentiary hearing and magistrate's decision

{¶11} An evidentiary hearing was held before the magistrate on July 23, 2020.

{¶12} By journalized Magistrate's Decision dated July 31, 2020, the magistrate found Mother was unemployed in September 2019 when she requested the administrative review and had been unemployed for over thirty days when submitting her request.

{¶13} The magistrate further found Mother resigned from her position with the Columbus City Schools rather than face termination. The magistrate noted, "Her unemployment being as a result of her own criminal behavior, she is voluntarily unemployed.  Her teacher's contract for school year 2019-2020 was to pay her $80,227.00. That is her imputed income for child support purposes." Magistrate Decision, 2.

{¶14} The magistrate found Father's yearly income is $74,635.52; he has health insurance for the children through his employment, and has a monthly VA benefit of $142.29. The magistrate found the children spend Friday, Saturday, and Sunday nights with Father on alternating weekends, or 78 nights per year.

{¶15} The magistrate made an overnight parenting-time adjustment, finding Father does not have court-ordered parenting time which is equal to or exceeds 90 overnights.

{¶16} The magistrate ordered child support to be paid by Father in the amount of $464.77 per month, per child, for a total of $929.54 per month plus 2% processing fee.

{¶17} Father objected to the Magistrate's Decision.

**The trial court overrules Father's objections**

{¶18} The trial court overruled Father's objections and affirmed the findings of the magistrate, with one exception, via judgment entry dated November 30, 2020.

*Untimely review*

{¶19} First, Father argued the magistrate should not have approved an administrative modification because 1) Mother sought review prior to 36 months after the establishment of the child support obligation, and 2) Mother failed to meet the criteria necessary for review prior to 36 months. The trial court disagreed, noting that the "JFS 01849" form is worded differently than the administrative regulation and it is "not clear" from item Number 2 on the form that 30 days of consecutive unemployment must occur before seeking review. Mother's documentation detailing the resignation established Mother "clearly expected to be unemployed in excess of thirty days." Entry, 2.

{¶20} The trial court disagreed with the magistrate's finding that Mother was unemployed for 30 consecutive days when she made her request for administrative review. However, the trial court found Mother had been unemployed in excess of 30 days when CSEA's Administrative Adjustment Recommendation was issued; Mother would have been terminated if she didn't resign, thus her unemployment was "beyond her control;" and it would be unfair to deny Mother's request for review on procedural grounds when she relied upon CSEA's administrative actions in undertaking the review. Additionally, the trial court noted Mother was unemployed for more than 30 consecutive days by November 1, 2019, the effective date of the child-support modification.

*Father requested original deviation: $75/month*

{¶21} Second, Father argued the magistrate should have applied the same deviation that was in place at the time of the Decree of Dissolution. The trial court found that deviation was premised upon the children spending roughly equal awake hours with each parent while school was in session. However, the deviation of $75/month was no longer appropriate because the children were with Mother more of the time due to the Covid pandemic and online schooling. The trial court therefore found that the reason for the original deviation had changed and that deviation was no longer appropriate.

*Rent and Father's overnights*

{¶22} Finally, Father argued the magistrate 1) failed to account for rent money Mother receives from her own father (Maternal Grandfather) as income and 2) mistakenly found that Father does not exercise more than 90 overnights with the children per year. The trial court found that Mother and Maternal Grandparents live together in a rented home and share rent and utility expenses; the rental money Maternal Grandfather gives

Mother is therefore not Mother's income but is paid toward rent. Upon review of the hearing transcript, the trial court found that Father spends 78 overnights per calendar year with the children, thus the magistrate therefore did not err in finding Father did not exercise more than 90 nights of parenting time per calendar year.

{¶23} The trial court affirmed the decision of the magistrate while making one factual correction: the magistrate erred in finding Mother had been unemployed for over 30 consecutive days when she submitted the request for administrative review. Nevertheless, as described supra, this finding was not fatal to the administrative review.

{¶24} Father now appeals from the trial court's Judgment Entry on Objections to Magistrate's Decision.

{¶25} Father raises two assignments of error:

**ASSIGNMENTS OF ERROR**

{¶26} "I. THE TRIAL COURT ERRED BY PERMITTING AN ADMINISTRATIVE REVIEW, AND MODIFYING APPELLANT'S CHILD SUPPORT, WHERE THE APPELLEE HAD NOT BEEN UNEMPLOYED FOR MORE THAN THIRTY DAYS PRIOR TO FILING THE REQUEST FOR REVIEW, AND WHERE THE EMPLOYMENT OR LAYOFF WAS NOT BEYOND HER CONTROL."

{¶27} "II. THE TRIAL COURT ERRED IN FINDING A CHANGE IN CIRCUMSTANCES SUFFICIENT TO ELIMINATE A PARENTING TIME DEVIATION IN SUPPORT, WHERE THE ALLEGED CHANGE IN CIRCUMSTANCES WAS CAUSED BY THE MISCONDUCT OF APPELLEE."

**ANALYSIS**

I., II.

{¶28} Father's assignments of error are related and will be considered together. In his first assignment of error, Father argues the trial court should not have permitted an administrative review or modified his child support obligation when Mother was not unemployed for 30 consecutive days before seeking review and her unemployment was not beyond her control. In his second assignment of error, he argues the change in circumstances underlying the modification was caused by Mother's misconduct, an improper basis for eliminating a parenting-time deviation.  We disagree.

*Modification of child support via CSEA: R.C. 3119.60 and Ohio Adm. Code 5101:12–60–05.1*

{¶29} In *Booth v. Booth*, 44 Ohio St.3d 142, 541 N.E.2d 1028 (1989), the Ohio Supreme Court determined that abuse of discretion is the appropriate standard of review in matters concerning child support. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). Furthermore, as an appellate court, we are not the trier of fact. Our role is to determine whether there is relevant, competent, and credible evidence upon which the factfinder could base his or her judgment. *Tennant v. Martin–Auer,* 188 Ohio App.3d 768, 2010–Ohio–3489, 936 N.E.2d 1013, ¶ 16 (5th Dist.), citing *Cross Truck v. Jeffries* (Feb. 10, 1982), Stark App. No. CA–5758, 1982 WL 2911.

{¶30} The Ohio Revised Code provides for multiple ways in which a child support obligation may be modified. A party may request a review and modification of child support through CSEA. *See* R.C. 3119.60, 3119.61 and 3119.76. A party may request an

administrative review of child support every 36 months from the most recent child support order. Ohio Adm.Code 5101:12-60-05.1(D). A child support enforcement agency has the authority to investigate, obtain information, recalculate, and issue administrative orders modifying support, and the trial court retains jurisdiction to modify child support under statutes and the Rules of Civil Procedure. *Taube v. Boyle*, 5th Dist. Delaware No. 19 CAF 02 0012, 2019-Ohio-3305, ¶ 8, citing *Hayslip v. Hanshaw*, 2016-Ohio-3339, 54 N.E.3d 1272, ¶ 14 (4th Dist.), internal citations omitted. "The General Assembly has adopted a scheme, supplemented by administrative rule, that governs when and how a child support enforcement agency may review and adjust a court-issued child support order." *Id.,* citing *Burton v. Harris*, 2013-Ohio-1058, 987 N.E.2d 745, ¶ 12 (10th Dist.).

{¶31} Based on R.C. 3119.60 and Ohio Adm. Code 5101:12–60–05.1, therefore, the CSEA, either sua sponte periodically or on the request of the obligor or obligee, can initiate an administrative review of a child-support order.  The CSEA establishes the date on which the review will formally begin, notifies the parties of the review and its commencement date, and requests the parties provide the agency with certain financial, health-insurance, and other information necessary to properly review the child-support order. R.C. 3119.60; Ohio Adm. Code 5101:12–60–05.3. On the date designated by the agency, it will calculate a revised amount of child support to be paid under the court child-support order. R.C. 3119.63(A); Ohio Adm. Code 5101:12–60–05.4(A). The child support enforcement agency then gives the obligor and obligee notice of the revised amount of child support and their right to request an administrative and court hearing on the revised amount. R.C. 3119.63(B) and (E); Ohio Adm. Code 5101:12–60–05.4(C).

{¶32} Following the receipt of such a request, R.C. 3119.64 requires the court to conduct a hearing in accordance with R.C. 3119.66. R.C. 3119.66, in turn, requires the court to "conduct a hearing to determine whether the revised amount of child support is the appropriate amount and whether the amount of child support being paid under the court child support order should be revised." The court must provide the parties notice of the hearing and, if necessary, require the parties to provide copies of various records, including W–2 statements, pay stubs, and proof of health insurance. *See* R.C. 3119.67 and 3119.68.

{¶33} Finally, pursuant to R.C. 3119.70, if a court conducts a hearing pursuant to R.C. 3119.66 and determines that the revised child support amount is appropriate, the court must issue a revised court child support order requiring the obligor to pay the revised amount. But, if the court finds that the revised child support amount is not appropriate, then the court must "determine the appropriate child support amount and, if necessary, issue a revised court child support order requiring the obligor to pay the child support amount determined by the court." R.C. 3119.70(B); *see also Staugler v. Staugler,* 160 Ohio App.3d 690, 2005–Ohio–1917, 828 N.E.2d 673, ¶ 12–14 (3d Dist.).

{¶34} The issue before the trial court upon a request for a hearing from the administrative review, therefore, is whether the revised amount is "appropriate." In the instant case, the trial court affirmed the magistrate's findings, agreeing with CSEA and the magistrate that modification of the child support amount was appropriate.

{¶35} Mother initiated a review based upon Ohio Adm.Code 5101:12-60-05.1, which states in pertinent part:

* * * *.

(D) Any party may initiate an administrative review every thirty-six months from the date of the most recent support order by:

(1) Completing and submitting the JFS 01849, "Request for an Administrative Review of the Child Support Order" (effective or revised effective date as identified in rule 5101:12-60-99 of the Administrative Code), to the CSEA.

\* \* \* \*.

(E) Any party may initiate an administrative review by submitting the JFS 01849 to the CSEA sooner than thirty-six months when any of the following circumstances applies:

\* \* \* \*.

(2) Either parent has become unemployed or been laid off, the unemployment or lay off is beyond the parent's control, and the unemployment or lay off has continued uninterrupted for thirty consecutive days. The requesting party must provide to the CSEA evidence of the unemployment or lay off, including evidence that the unemployment or lay off is beyond the parent's control. \* \* \* \*.

\* \* \* \*.

{¶36} Father argues Mother prematurely initiated administrative review pursuant to Ohio Adm.Code 5101:12-60-05.1(E)(2) because the unemployment had not continued for 30 uninterrupted consecutive days before she sought the review. Mother signed the JFS Form 01849 on September 4, 2019, the day after she resigned from the Columbus City Schools.  At that point she was also on disability ending in December 2019.

{¶37} The trial court found the wording of JFS Form 01849 is confusing and is not clear that the 30 days of consecutive unemployment must take place before the form is submitted. We agree that Item 2 on the form, "I **am** * * * unemployed or laid off beyond the parent's control for thirty consecutive days," (emphasis added) permits the interpretation of an *anticipated* 30 days of unemployment as opposed to a *completed* 30 days of unemployment. We therefore disagree with Father that the trial court abused its discretion in failing to reverse the administrative modification based upon the premature request.

{¶38} We also note that despite Mother's allegedly premature request for review, CSEA undertook the review and issued the Administrative Adjustment Recommendation that recommended child support should be $970.54 payable from Father to Mother. Father then objected to the CSEA Recommendation on the basis that he disagreed with Mother's "income figure," not with the timing of the request for review.

{¶39} Father also argues the trial court erred in finding Mother's unemployment was beyond her control, another factor cited in the request for administrative review. The magistrate agreed with Father that Mother was voluntarily unemployed and imputed her income at $80,227.00. Father argues the trial court implicitly reversed this finding in the following portion of the Entry:

> Further, [the email correspondence attached to Mother's JFS 01849] clearly indicates that Mother was to be terminated if she did not resign from her position, so it is appropriate to determine that the end of her employment was beyond her control on the date of her resignation. Further, this is a Court of equity, and it would be unfair

in this case to deny [Mother's] request for a child support review, said request now made in excess of fourteen months ago, when [Mother] justifiably relied on the CSEA's administrative actions to review the child support order following the submission of her Request for Administrative Review of the Child Support Order (JFS Form 01849).

Judgment Entry on Objections to Magistrate's Decision, 4.

{¶40} A parent's voluntary unemployment or underemployment affects the computation of that parent's income. Pursuant to R.C. 3119.01(C)(9)(b), "income" means, "[f]or a parent who is unemployed or underemployed, the sum of the gross income of the parent and any potential income of the parent." Whether a parent is "voluntarily underemployed" and the amount of potential income to be imputed to a child support obligor are matters to be determined by the trial court based upon the facts and circumstances of each case. *Carpenter v. Carpenter*, 5th Dist. Tuscarawas No. 2019 AP 04 0013, 2019-Ohio-4709, ¶ 39. "In deciding if an individual is voluntarily under-employed or unemployed, the court must determine not only whether the change was voluntary, but also whether it was made with due regard to obligor's income-producing abilities and his or her duty to provide for the continuing needs of the child." *G.P. v. L.M.*, 5th Dist. Morrow No. 16CA0005, 2016-Ohio-7955.

{¶41} The decision to impute income to a parent is within the trial court's sound discretion. *Id.* The parent claiming that his or her former spouse is voluntarily under-employed has the burden of proof. *Carpenter,* supra, at ¶ 40, citing *In re B.S.*, 9th Dist. Summit No. 24605, 2009-Ohio-4660.

{¶42} The magistrate and the trial court recognized Mother's unemployment is not as simple as termination due to the criminal charges. Mother resigned from the Columbus City Schools because she was criminally charged with child endangering and disorderly conduct and would have been terminated. The circumstances of those charges are not in the record before us. It is undisputed, however, that Mother was successfully enrolled in a diversion program and was on target to have the charges dismissed altogether on May 22, 2020. Mother was also on disability arising from treatment for mental illness. When her term of disability ended and she was released to work, she submitted resumes to four different educational employers and intended to re-apply to Columbus City Schools. The timing of these efforts occurred in March 2020, however, contemporaneous with the onset of the pandemic, lockdown, and online schooling.

{¶43} The circumstances of the pandemic affected Mother's employment options in two ways. First, her background is in education and she sought jobs in education, but those employers initiated hiring freezes. Second, she had two minor children at home with behavioral issues, navigating online schooling with no options for child care. Although Mother and the children live in a rented home with Maternal Grandparents, the grandparents are not suitable child care providers during the pandemic. Maternal Grandfather is in poor health, and Maternal Grandmother works, so they are unable to help the children with remote schooling.

{¶44} Father even admittedly recognized the additional responsibilities on Mother because he voluntarily undertook to give her $60 per week for extra expenses because she was with the children around the clock. He made the agreed-upon child support payments of $75 per month, and he testified he also gave Mother $60 per week "once the

kids were out of school for the Covid virus."  The last payment of that nature was in May 2020.

{¶45} By the time of the evidentiary hearing in July 2020, the children were on summer break. They spent six nights per month with Father (alternate Fridays through Mondays) and the remaining with Mother. The trial court affirmed the magistrate's decision that a modification of child support was appropriate and that rationale underlying the original deviation no longer existed because the children spent limited time with Father.  Six nights a month no longer approximated the parties' earlier agreement.

{¶46} In his second assignment of error, Father argues the trial court should not have effectively eliminated a parenting-time deviation in support (i.e, the original deviation of $75/month) because the issue of parenting time was not before the Court.  This circular argument is inconsistent with Father's insistence that the magistrate should have maintained the original deviation in the amount of $75/month—a deviation premised upon roughly 50/50 parenting time. Father again relies upon Mother's criminal charges and termination, arguing "absolutely no evidence was presented as to the reason that the children were at home."

{¶47} We disagree with Father's characterization. Mother's uncontested testimony was that she was home with the children during the school year because her own employment opportunities were drastically curtailed and she did not have adequate child care during the pandemic to assist with online schooling for children with behavioral issues.  Father apparently recognized this dilemma because he undertook to give Mother $60 per week "once the kids were not—were, like, out of school for the Covid virus."  T.

49. At the time of the hearing, in July, during summer break, the children were at home with Mother because they were only with Father six nights a month.

{¶48} Moreover, Father's second assignment of error implicitly argues the trial court abused its discretion in finding a change of circumstances justifying modification of child support. A "substantial change in circumstances" is a requisite finding pursuant to R.C. 3119.79(C), but R.C. 3119.79 does not apply to this case. *Hannah v. Hannah*, 2016-Ohio-1538, 63 N.E.3d 703, ¶ 17 (8th Dist.). R.C. 3119.79 addresses the court's recalculation of the amount of a child support obligation upon the request of a party to the court. *Id.* "In other words, it applies to a party's motion to modify child support obligations." *Id.*, citing *Rocky v. Rockey,* 4th Dist. Highland No. 08CA4, 2008-Ohio-6525, 2008 WL 5197123, ¶ 28, citing *Butler v. Butler,* 4th Dist. Scioto No. 02CA2833, 2002-Ohio-5877, 2002 WL 31414339, ¶ 21. Statutory sections R.C. 3119.60 through 3119.65, on the other hand, relate to an administrative review of the child support obligation. *Id.*

{¶49} Here, upon Mother's request, CSEA conducted an administrative review of the child support order pursuant to R.C. 3119.60 through R.C. 3119.65. Then the trial court, through the magistrate, conducted a hearing pursuant to R.C. 3119.66 upon Father's request for judicial review. The court did not conduct a hearing pursuant to R.C. 3119.79 upon a motion for modification of child support. Accordingly, the court was not required to find a "substantial change of circumstances" under R.C. 3119.79. *Hannah*, supra, 2016-Ohio-1538 at ¶ 18. Rather, the court was required to determine the "appropriate amount" under R.C. 3119.66. *Id.*, citing *Rockey* at ¶ 29.

{¶50} The court's responsibility is to determine an "appropriate" level of child support under these circumstances and need not find that a change in circumstances

warrants modification. *Brown v. Allala*, 9th Dist. Summit No. 27086, 2014-Ohio-4917, ¶ 15, citing *Rockey,* supra, 2008–Ohio–6525, ¶ 29.

{¶51} Upon our review of the record and Father's arguments, we do not find the trial court abused its discretion in determining that a revised child support amount is appropriate and in issuing a revised court child support order requiring Father to pay the revised amount. R.C. 3119.70(B). It is well-established that the trier of fact is in a far better position to observe the witnesses' demeanor and weigh their credibility. *See, e.g., Taralla v. Taralla,* 5th Dist. Tuscarawas No.2005 AP 02 0018, 2005–Ohio–6767, ¶ 31, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). The trial court, as the ultimate fact finder and issue resolver, is free to believe all, part, or none of the testimony of each witness. *Carpenter v. Carpenter*, 5th Dist. Tuscarawas No. 2019 AP 04 0013, 2019-Ohio-4709, ¶ 45, citing *State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). The circumstances underlying the parties' original deviation changed in significant ways, exacerbated by the pandemic, and the child support modification was appropriate.

{¶52} Upon our review of the record, we find the trial court did not abuse its discretion. Father's two assignments of error are therefore overruled.

**CONCLUSION**

{¶53} Father's two assignments of error are overruled and the judgment of the

Fairfield County Court of Common Pleas, Domestic Relations Division is affirmed.

By:  Delaney, J.

Wise, John, J., concurs

Hoffman, P.J., concurs and dissents separately.

*Hoffman, P.J., concurring in part, and dissenting in part*

**{¶54}** I concur in the majority's analysis in rejecting Appellant's argument Appellee's request for administrative review by CSEA was premature. However, I respectfully dissent from the majority's and trial court's analysis regarding whether Appellee's unemployment was beyond her control and whether the change in parenting time no longer approximated the parties' earlier agreement.

**{¶55}** The magistrate found Appellee voluntarily unemployed and imputed income to her in the amount of $80,227.00. Appellee did not file an objection to that determination. Nevertheless, the trial court found Appellee's unemployment was "beyond her control." The majority's discussion of this issue implicitly suggests it finds the trial court's decision correct. I disagree.

**{¶56}** Appellee's resignation was the result of her being charged with criminal offenses. The fact Appellee successfully enrolled in a diversion program, which may culminate in the charges being dismissed, tacitly suggests an admission to the charges, not her innocence of them.

**{¶57}** As to the purported change in parenting time, the majority notes at the time of the original Decree of Dissolution, "Although the parties intended the [shared parenting] plan to reflect a 50/50 parenting schedule, Father had the children every Monday and Tuesday from 3:00 p.m. until 7:00 p.m. and every other weekend, from 3:00 p.m. Friday through Monday morning." (Maj. Op. at ¶3). Under that agreed plan, Appellant had the children 78 nights per year. At the time of the hearing, the magistrate found the children were spending 78 nights per year with Appellant -- the same as in the original agreement.

The majority, nonetheless, finds six nights a month no longer approximated the parties' earlier agreement.[1]

**{¶58}** The significance of the lack of change in parenting time is the parties had agreed to a downward deviation in child support at the time of the original decree based upon the same number of overall night visits with Appellant as existed at the time of the hearing.[2] Such ought not provide a justification for change as it was clearly in the contemplation of the parties at the time of the original Decree of Dissolution.

**{¶59}** I conclude it was error for the trial court to use either of these reasons to modify the original child support order.

**{¶60}** I further disagree the trial court was not required to find a "substantial change of circumstances" under R.C. 3119.79. While I concede R.C. 3119.66 states the trial court is to determine the "appropriate amount" of child support upon an administrative review by the CSEA, such circumvents the requirement to show a substantial change in circumstance. Because I find the trial court incorrectly concluded Appellee's unemployment was beyond her control and the overnight parenting time remained unchanged from the original Decree of Dissolution, I would reverse the trial court's decision.

---

[1] Some months would be more than six nights depending on when the weekends fell in correspondence to the start or end of any particular month.

[2] While Appellee's time was increased with the children due to the Covid-19 pandemic, Appellee did not have any added child care expenses during such time as she was unemployed.