[Cite as *Baker-Chaney v. Chaney*, 2017-Ohio-5548.]

COURT OF APPEALS
HOLMES COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| REBECCA L. BAKER-CHANEY NKA HILL | JUDGES: Hon. Patricia A. Delaney, P.J. Hon. William B. Hoffman, J. |
| First Petitioner-Appellant | Hon. John W. Wise, J. |
| -vs- | Case No. 16CA005 |
| JOSEPH B. CHANEY | O P I N I O N |
| Second Petitioner-Appellee | |


CHARACTER OF PROCEEDING:      Appeal from the Holmes County Court of Common Pleas, Domestic Relations Division, Case No. 13DS103


JUDGMENT:      Affirmed in part, Reversed in part and Remanded


DATE OF JUDGMENT ENTRY:      June 26, 2017

APPEARANCES:

For First Petitioner-Appellant      For Second Petitioner-Appellee

SCOTT N. FRIEDMAN      RACHEL E. HOFFEE
HEATHER R. GALL      132 E. Liberty Street
Friedman & Mirman Co., LPA      Wooster, Ohio 44691
1320 Dublin Road, Suite 101
Columbus, Ohio 43215-1188

Guardian Ad Litem

KARIN WIEST
107 W. Liberty Street
Wooster, Ohio 44691

*Hoffman, J.*

**{¶1}** First petitioner-appellant Rebecca L. Baker-Chaney, nka Rebecca L. Hill, ("Mother") appeals the June 10, 2016 Judgment Entry entered by the Holmes County Court of Common Pleas, Domestic Relations Division, which approved, adopted, and incorporated the Findings of Fact and Conclusions of Law filed by Second petitioner-appellee Joseph B. Chaney ("Father"); terminated the parties' January 24, 2014 Shared Parenting Plan; and named Father as the sole residential custodian of the parties' minor children.

STATEMENT OF THE CASE AND FACTS

**{¶2}** The parties were married on May 25, 2004, in Jamaica. Two daughters were born as issue of said union, to wit: N.C. (DOB 8/24/2005) and A.C. (DOB 9/15/2006). The parties separated in early 2013. The parties' marriage was terminated pursuant to a decree of dissolution with a shared parenting plan filed January 24, 2014. The shared parenting plan provided for the parties to have equal parenting time with the children on alternating weeks.

**{¶3}** After Father moved out of the marital residence in May, 2013, the children had week on/week off visitation with each parent. Father lives in a walk-out basement apartment in his mother's home. Mother remained in the marital residence in Killbuck, Ohio.

**{¶4}** Mother began dating Adam Hill after the parties separated, but before the dissolution of the marriage. Mother's relationship with Hill became more serious following the dissolution and Mother decided to move to New Albany, Ohio, where Hill resides.

Through an email, Mother asked Father for permission to move the children with her to New Albany. Father refused. Mother filed a motion to modify the shared parenting plan on June 25, 2014, requesting the trial court name her the sole custodial parent and give her permission to relocate with the minor children to New Albany, Ohio. In response, Father filed a motion to modify the shared parenting plan, or in the alternative, motion to terminate the shared parenting plan.

{¶5} The trial court commenced a hearing on the motions on October 15, 2015. The following evidence was adduced at the hearing.

{¶6} Mother was the primary caretaker of the children from their births until the parties separated in 2013. Following the separation, the children spent 50% of their time with Mother and 50% of their time with Father on a week on/week off schedule. Father's mother assists with the children when he is working or otherwise unable to do so.

{¶7} On January 24, 2014, the same day as the final dissolution hearing, Mother obtained a civil protection order against Father, with his consent. Mother requested the CPO following an incident during which Father trapped her in a bathroom and allegedly kicked her. The children were in the home when this occurred. Father testified he had never physically stuck Mother during an argument about the children. Transcript of October 15, 2015 Hearing at 121. Mother stated she did not have any concerns about Father being violent with the children and Father had not been violent towards her since the divorce. *Id.* at 73. The children had not expressed any fear of Father. *Id.* at 56.

{¶8} Mother and Father communicate effectively regarding decisions involving the children although Mother testified she has difficulty communicating with Father. Father accommodates any changes Mother needs in the visitation schedule.

**{¶9}** For a period of time around 2007, Father considered himself addicted to prescription pain medications. Transcript of December 1, 2015 Hearing at 77-79. Father sought admittance, on his own, to a Suboxone Clinic in Holmes County. *Id.* at 70. Father has not had any issues with abusing prescription medication since 2007. *Id.* at 78-79. Father has never had a positive drug screen during the four years he has worked for his employer. *Id.* at 78. Father's physician is aware of his past prescription drug use and monitors his current prescription drug use. *Id.* at 77.

**{¶10}** Dr. Marianne Bowden testified she completed psychological evaluations of the parties upon the request of the trial court. Oct. 15, 2015 Tr. at 21, 44. Dr. Bowden stated she never specifically asked Father if he had completed the treatment program at the Suboxone Clinic, explaining she did not recall being concerned about whether he had done so. *Id.* at 47. Dr. Bowden expressed her belief Father was open and honest with her about his past prescription drug use. *Id.* at 54. Dr. Bowden added she did not get the impression from the parties or the children Father was currently abusing drugs. *Id.* at 55. Dr. Bowden noted, when drawing her conclusions and making recommendations, she places more weight upon the results of an individual's psychological testing than on the background information provided by that individual. *Id.* at 37. The results of Father's psychological tests did not give Dr. Bowden any indication he was addicted to drugs. *Id.* at 55. Dr. Bowden did not recommend addiction counseling for Father even after she learned he was currently prescribed and taking opiates. *Id.* at 45.

**{¶11}** Based upon the individual testing, Dr. Bowden found both parents function fairly well and neither has any mental illness, personality dysfunction, or psychopathology. In her evaluation, Dr. Bowden recommended the children remain with Father as such

would involve the least amount of change. Dr. Bowden explained the older child revealed considerable sadness and anger with Mother. Dr. Bowden noted requiring the child to live with Mother on a full-time basis was not currently in her best interest. Dr. Bowden recommended the children reengage in individual counseling.

{¶12} Dr. Dwight McFadden III, the head of the Holmes County Suboxone Clinic, provided general testimony about opioids and opiate addiction. *Id.* at 141. Dr. McFadden stated he had not met anyone who had once been addicted to a substance, subsequently be able to use the substance without falling back into the addiction. *Id.* at 149. Dr. McFadden indicated an individual would need "some very strong support" to avoid a setback if the individual needed to subsequently take prescription pain medication. *Id.* He added he hoped anyone who successfully completed the Suboxone program would continue counseling. *Id.*

{¶13} In her report, Attorney Karen Wiest, the guardian ad litem, noted Father admitted a past history of opiate addiction and, during his deposition, his current use of prescription pain medication. Attorney Wiest expressed her concern with Father's current use of pain killers, but added there was no evidence he currently has a substance abuse problem. She did not recommend addiction or any other type of counseling for Father. Attorney Wiest did, however, express worry about Father's ability to handle stressful situations.

{¶14} Attorney Wiest stated the children had different outlooks on the situation. The older child was very adamant about not wanting to move with Mother. She did not feel confident she would see Father on a regular basis if she moved with Mother. The younger child did not express an opinion one way or another as to with whom she wanted

to live. She was confident she would see both parents on a regular basis no matter where she lived.

**{¶15}** Attorney Wiest recommended the trial court consider allowing the children to move to New Albany with Mother "as long as there is a schedule giving both parents substantial time with the girls". The guardian acknowledged the instant situation was a difficult case and a close case, but believed the children were well adjusted and would be fine with either outcome. She also recommended the children begin counseling again. At the end of the second day of the hearing, Attorney Wiest was asked if any information she learned during the hearing changed the recommendations set forth in her report. She responded, "No." 12/1/12 Tr. at 92.

**{¶16}** At the conclusion of the first day of the hearing, October 15, 2015, the trial court issued an interim order, designating Father as the temporary residential parent of the children and awarding visitation to Mother pursuant to Holmes County Local Rules. Mother filed a motion for emergency custody and parenting time on November 6, 2015. Mother attached the affidavit of Attorney Wiest in support of her motion. In her affidavit, Attorney Wiest stated the trial court's temporary orders were not in the children's best interest. The trial court denied Mother's motion. On the second day of the hearing, Attorney Wiest testified she did not visit the parties or the children between October 15, 2015, and the date of the filing of Mother's emergency motion. *Id.* at 100. Attorney Wiest further stated she had not visited the parties or the children, or spoken with the children's counselors or teachers between October 15, 2015, and December 1, 2015.

**{¶17}** Danielle Prohaska provided a comparative school analysis between the New Albany School District and the West Holmes School District. 10/15/15 Tr. at 6. Her

report established the New Albany School District received a higher achievement number (100%) than the West Holmes School District (87.5%). *Id.* at 10. However, Prohaska acknowledged a student attending the West Holmes School District was not necessarily at a disadvantage. *Id.* at 11.

**{¶18}** The trial court granted the parties leave to submit post hearing arguments, proposed Findings of Fact and Conclusions of Law, and proposed Final Judgment Entries. Following the conclusion of the hearing on December 1, 2015, the trial court issued a Journal Entry ordering Mother to pay Father's attorney fees in the amount of $13,754.12, by December 15, 2015. Mother complied with the order, and paid Father's attorney fees on December 15, 2015.

**{¶19}** Via Judgment Entry filed June 10, 2016, the trial court approved, adopted, and incorporated Father's proposed Findings of Fact and Conclusions of Law as order of the court. The trial court determined a change of circumstances had occurred and concluded terminating the Shared Parenting Plan was in the best interest of the children. The trial court designated Father as the residential parent, and awarded Mother standard visitation.

**{¶20}** It is from that entry Mother appeals, raising the following assignments of error:

> "I. THE COURT ERRED AND ABUSED ITS DISCRETION BY UNREASONABLY, ARBITRARILY, AND UNCONSCIONABLY FAILING TO CONSIDER THE STATUTORY FACTORS REGARDING THE CHILDREN'S BEST INTEREST AND ENTERING AN ORDER THAT WAS

NOT SUPPORTED BY A SUBSTANTIAL AMOUNT OF COMPETENT, CREDIBLE EVIDENCE.

"II. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN PREJUDGING THE CASE AND ISSUING TEMPORARY ORDERS DURING THE POST DECREE TRIAL.

"III. THE COURT ERRED, ABUSED ITS DISCRETION, AND VIOLATED REBBIE'S DUE PROCESS RIGHTS IN FAILING TO ALLOW REBBIE TO PRESENT ALL OF HER EVIDENCE AT TRIAL.

"IV. THE COURT ERRED AND ABUSED ITS DISCRETION IN ORDERING REBBIE TO PAY BRAD'S ATTORNEY FEES."

I

**{¶21}** In her first assignment of error, Mother maintains the trial court erred and abused its discretion by failing to consider the statutory best interest factors and issuing an order which was not supported by a substantial amount of competent, credible evidence. Mother submits the trial court's failure to consider the statutory factors was unreasonable, arbitrary, and unconscionable.

**{¶22}** On appeal, our standard of review in assessing the disposition of child custody matters is that of abuse of discretion. *Miller v. Miller* (1988), 37 Ohio St.3d 71, 73–74. In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140. Furthermore, as an appellate court reviewing evidence in custody matters, we do not function as fact finders; we neither weigh the evidence nor judge the credibility of

witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base his or her judgment. *See Dinger v. Dinger,* 5th Dist. Stark No.2001CA00039, 2001–Ohio–1386. Because custody issues are some of the most difficult and agonizing decisions a trial judge must make, he or she must have wide latitude in considering all the evidence. *Davis v. Flickinger* (1997), 77 Ohio St.3d 415, 418, 674 N.E.2d 1159.

{¶23} In addressing a motion for the termination or modification of a shared parenting plan where the parents have ceased to mutually agree, a trial court must determine (1) whether a change in circumstances has occurred, (2) whether termination or modification is in the children's best interests, and (3) whether the advantage to the child resulting from the termination or modification outweighs any potential harm. *See Ford v. Ford,* 5th Dist. Tuscarawas No.2012 AP 03 0025, 2012–Ohio–5454, ¶ 13.

{¶24} R.C. 3109.04(F) states, in determining the best interest of a child, "the court shall consider all relevant factors, including but not limited to":

(a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights * * *

{¶25} "No one factor is dispositive." *Carr v. Carr,* 12th Dist. Warren Nos. CA2015–02–015 and CA2015–03–020, 2016–Ohio–6986, ¶ 22. Rather, the trial court has discretion to weigh any and all relevant factors as it sees fit. *Id.* The trial court is not required to separately address each best interest factor enumerated in R.C. 3109.04. *See In re Henthorn,* Belmont App. No. 00–BA–37, 2001–Ohio–3459. Further, absent a Civ.R. 52 motion, a trial court need not make specific findings correlating to R.C. 3109.04(F) in the judgment entry. See *Harp v. Harp* (Apr. 16, 1990), Clermont App. No. CA 89–08–075. We presume the regularity of the trial court proceedings unless the record demonstrates otherwise. *State v. Phillips* (1995)*,* 74 Ohio St.3d 72, 92, 656 N.E.2d 643. In other words, this Court will presume the trial court considered the R.C. 3109.04(F) factors, unless there is reason to believe the trial court did not consider those factors. See *Bird v. Bird* (Feb. 19, 1985), Stark App. No. CA 6423.

{¶26} The focus of Mother's argument is the trial court's negative perception of her. Mother points to the trial court's statement in the June 10, 2016 Judgment Entry, "SELFISH is what ultimately is determinative in this case", as "a prime example of the court's unreasonable, arbitrary, and unconscionable attitude in this case." Brief of

Appellant at 13. Mother concludes, based upon similar statements in the trial court's orders and remarks at trial, "the ONLY thing the court considered in this matter was [her] remarriage to a man of perceived financial means and a move to a more affluent community than Holmes County." *Id.* Mother asserts the trial court took offense and, as a result, awarded full custody of the children to Father, "an admitted prescription drug addict who is currently using the very drugs he had abused in the past." *Id.* Mother adds the trial court "used the custody and parenting time orders to punish [her] for her remarriage and move to New Albany." *Id.*

**{¶27}** While we do not necessarily agree or approve of the trial court's language or perceived attitude toward Mother, we do find there is relevant, competent and credible evidence in the record upon which the trial court could base its decision.

**{¶28}** Dr. Bowden and Attorney Wiest both testified they had seen no evidence Father was currently abusing prescription pain medication. Neither Dr. Bowden nor Attorney Wiest recommended addiction counseling for Father at any time during the proceedings. Both indicated the older child was very adamant about not wanting to move with Mother as she did not feel confident she would see Father on a regular basis if she did. The younger child did not express an opinion one way or another as to with whom she wanted to live. Dr. Bowden recommended the children remain with Father as such would involve the least amount of change. Attorney Wiest suggested the trial court consider allowing the children to live with Mother "as long as there is a schedule giving both parents substantial time with the girls". The guardian acknowledged the instant situation was a difficult case and a close case, but believed the children to be well

adjusted and would be fine with either outcome. Both Dr. Bowden and Attorney Wiest recommended the children engage in counseling with parent participation.

**{¶29}** Father currently lives in the walk-out basement apartment in his mother's home. His mother assists him with the children when he is unable to do so due to his work schedule. After the trial court awarded Father temporary custody of the children following the first day of the hearing, Father re-engaged the children in counseling. Father is involved in the children's extracurricular activities.

**{¶30}** The testimony revealed both Mother and Father are good parents and appropriate with the children. Their parenting abilities are equal. The children love Mother and Father equally. The children are bonded with their extended family, many of whom live in Holmes County.

**{¶31}** It is axiomatic in proceedings involving the custody and welfare of children, the power of the trial court to exercise discretion is particularly important. *See Thompson v. Thompson* (1987), 31 Ohio App.3d 254, 258, 511 N.E.2d 412, citing *Trickey v. Trickey* (1952), 158 Ohio St. 9, 13, 106 N.E.2d 772. Under the present circumstances, we find the record does not affirmatively demonstrate the trial court failed to consider the statutory "best interest" factors, and its decision did not constitute an abuse of discretion.

**{¶32}** Based upon the foregoing, we find the trial court's order was supported by a substantial amount of competent, credible evidence. [1]

**{¶33}** Mother's first assignment of error is overruled.

---

[1] Likewise, we would have found no abuse of discretion if the trial court had awarded custody of the children to Mother.

II

**{¶34}** In her second assignment of error, Mother argues the trial court erred and abused its discretion in issuing temporary orders during the post-decree trial. Specifically, Mother claims the trial court prejudged the case and issued the temporary orders to "punish" her for relocating.

**{¶35}** A temporary order allocating custody between parents is not a final judgment, but rather is an interlocutory order. See, e.g., *State ex rel. Thompson v. Spon* (1998), 83 Ohio St.3d 551, 554, 700 N.E.2d 1281; *State ex rel. Wallacy v. Smith* (1997), 78 Ohio St.3d 47, 50–51, 676 N.E.2d 109; *In re Devlin* (1992), 78 Ohio App.3d 543, 605 N.E.2d 467. "In a domestic relations action, interlocutory orders are merged within the final decree, and the right to enforce such interlocutory orders does not extend beyond the decree, unless they have been reduced to a separate judgment or they have been considered by the trial court and specifically referred to within the decree." *Colom v. Colom* (1979), 58 Ohio St.2d 245, 389 N.E.2d 856. Thus, the court's final order supercedes the temporary orders and corrects any error. *Smith v. Quigg,* Fairfield App. No.2005–CA–01, 2006–Ohio–1494, at ¶ 36; see, also, *Eichenberger v. Eichenberger* (Oct. 29, 1998), Franklin App. No. 97APF12–1599; *Wyss v. Wyss* (1982), 3 Ohio App.3d 412, 413, 445 N.E.2d 1153. Because the temporary order merged into the final judgment, any possible error contained therein is now moot. See, *Bowker v. Bowker,* Delaware App. No. 10CAF110085, 2011–Ohio–4524 at ¶ 44, citing, *Ruby v. Ruby* (Aug. 11, 1999), Coshocton App. No. 99–CA–4 ("Temporary orders are merged into the final decree of divorce, and cannot now be claimed as error.").

**{¶36}** Mother's second assignment of error is overruled.

III

**{¶37}** In her third assignment of error, Mother contends the trial court erred, abused its discretion, and violated her due process rights by failing to allow her to present all of her evidence at trial.  Specifically, Mother takes issue with the trial court's denying her the right to inspect Father's medical records as well as the trial court's preventing her from calling a rebuttal witness.

**{¶38}** Generally, the admission or exclusion of relevant evidence is within the sound discretion of the trial court and its decision to admit or exclude such evidence will not be disturbed absent an abuse of discretion. *State v. Awkal* (1996)*,* 76 Ohio St.3d 324, 333, 667 N.E.2d 960.

**{¶39}** On April 9, 2015, Mother filed a motion to compel discovery based upon Father's refusal to sign six release of information consent forms directed to Father's health care providers which sought Father's complete medical records from 2005, through present.  Father filed a response requesting the trial court deny Mother's motion or, in the alternative, conduct an in camera review of the documents to determine, which, if any, where relevant to the matter at hand.  Via Journal Entry filed June 29, 2015, the trial court found Mother's motion to be overbroad and ordered an in camera inspection of Father's medical records from January 24, 2014, to the current date.  On August 4, 2015, the trial court issued a journal entry indicating it had received and reviewed the medical records, and found such to be irrelevant.

**{¶40}** We find Mother has failed to demonstrate how her due process rights were violated or how she was prejudiced by the trial court's in-camera inspection of Father's medical records.  The trial court indicated it had reviewed the records and found such to

be irrelevant. There is nothing in the record to suggest the trial court did not review the records or withheld information supportive of its position. We have reviewed the sealed medical records and agree with the trial court's determination.

{¶41} We further find the trial court did not abuse its discretion in limiting which medical records it would review. The parties entered into their shared parenting agreement in January, 2014. Mother filed her motion to modify the shared parenting plan a mere four months later. To determine the motion, the trial court did not need to delve into evidence pre-dating the shared parenting plan.

{¶42} With respect to the second ground upon which Mother's predicates this assignment of error, we also find Mother's due process rights were not violated by the trial court's refusal to allow her to call a rebuttal witness. Mother sought to impeach Father by calling a customer for whom Father had installed a satellite dish. During his cross-examination, Father denied using his employment position to gain entry into a customer's home during the period between the first and second days of the hearing. The witness allegedly would have testified Father asked to use the restroom and, thereafter, she found prescription pain medication missing from her medicine cabinet. Father was never charged with any offense relative to this customer. The customer could not definitely say Father took the medication. Because the probative value of this testimony is outweighed by the danger of unfair prejudice, we find the trial court did not abuse its discretion by excluding the testimony. Evid. R. 403(A).

{¶43} Mother's third assignment of error is overruled.

IV

**{¶44}** In her final assignment of error, Mother submits the trial court erred and abused its discretion in ordering her to pay Father's attorney fees.

**{¶45}** R.C. 3105.73(B) allows the court to award "reasonable" attorney fees to either party in any post-decree motion which arises out of the divorce, if the court finds attorney fees are "equitable." When deciding whether to award attorney fees, the court may consider "the parties' income, the conduct of the parties, and any other relevant factors the court deems appropriate, but it may not consider the parties' assets."

**{¶46}** An award of attorney fees related to a post-decree motion or proceeding will not be overturned absent an abuse of discretion. *Roubanes v. Roubanes*, 10th Dist. No. 14AP-183, 2014-Ohio-5163, 2014 WL 6482785, ¶ 6. While the trial court has discretion in determining the amount of attorney fees, the court must base its decision on evidence showing the reasonableness of the time spent on the matter and the hourly rate. *Bagnola v. Bagnola,* 5th Dist. Stark No.2004CA00151, 2004–Ohio–7286 at ¶ 36.

**{¶47}** At the conclusion of the second day of the hearing, the trial court ordered Mother to "pay as and for interim attorney's fees of the amount reflected on [Father's] Exhibit D, thirteen thousand seven hundred fifty four dollars and twelve cents ($13754.12) on or before December fifteenth (15th) that's two weeks from today." 12/1/15 Tr. at 104.

**{¶48}** The following exchange occurred between Attorney Luke Brewer, counsel for Mother, and the trial court:

MR. BREWER:     * * * Your Honor I would like to request a hearing as I believe we are allowed under the Civil Rules if the attorney fees are granted.   A hearing number one so that we can take testimony on that

specific issue, and secondly so we can hear expert testimony to determine whether or not those fees are reasonable. So I would like to make that request in . . .

THE COURT: I am going to overrule that for the record.

MR. BREWER: Okay, umm I would also like to state that per the order we were required to submit an affidavit of income, uh by today's date we do have that ready right now and we will file that by todays [sic] date. And I would ask that that be considered in determine whether or not uh number one.

THE COURT: The affidavit of all household members?

MR. BREWER: The affidavit has just of [Mother].

THE COURT: Okay so I'll considered the testimony that the other household members gave about their income, and their lifestyle and the things that they are able to provide and the fact that he was inaudible as a stay at home mom, all that testimony that I heard on October fifteenth (15th) I will have to rely on that. And that's going to be the basis of my order. 12/1/15 Tr. at 109.

**{¶49}** Mother complied with the trial court's order, and paid Father's attorney fees on December 15, 2015.[2] We find Mother properly objected to the trial court's award of

---

[2] Generally, we would find an assignment of error challenging a trial court's order of attorney fees to be moot if the party challenging the order had paid the attorney fees. However, given the trial court's comment instructing Wife to come with her toothbrush if she had not complied with the order within fourteen days as she would be going to jail, renders the satisfaction of the order involuntary. Mother was denied the opportunity to stay the attorney fee award pending appeal. Accordingly, she had little choice but to pay the award pending appeal or risk being held in contempt and incarcerated by the trial court. Mother's payment to Father was not voluntary such as to cause a waiver of her right to appeal this issue. *Janosek v. Jansosek,* 8th Dist. Nos. 86771 and 86777, 2007-Ohio-68, para. 35.

attorney fees without conducting a hearing to determine the reasonable value of the award. The trial court simply refused to conduct a hearing.  We find the record is devoid of any evidence with which the trial court could have determined the requested attorney fees were reasonable and necessary. The only evidence before the trial court was Father's Exhibit D, an affidavit of attorney fees signed by Father's counsel. As such, we find the trial court abused its discretion in awarding attorney fees without an evidentiary hearing as requested by Mother as to the amount to be awarded.

{¶50}  Accordingly, we reverse and remand the matter to the trial court for further proceedings on the issue of attorney fees.

{¶51}  Mother's fourth assignment of error is sustained.

{¶52} The judgment of the Holmes County Court of Common Pleas, Domestic Relations Division, is affirmed, in part, reversed, in part, and remanded for further proceedings consistent with the law and this Opinion.

By: Hoffman, J.

Delaney, P.J.  and

Wise, John, J. concur


WBH:0620