[Cite as *In re B.C.*, 2026-Ohio-97.]

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN RE: B.C.

Case No. 25CA000025

<u>Opinion and Judgment Entry</u>

Appeal from the Guernsey County Court of Common Pleas, Juvenile Division, Case No. 24JG00203

Judgment: Affirmed

Date of Judgment Entry: January 12, 2026

**BEFORE:** William B. Hoffman, Kevin W. Popham, David M. Gormley, Appellate Judges

**APPEARANCES:** John Treleven, Esq., Treleven & Klingensmith, LLC, for Appellant-Mother; Elgine Heceta McArdle, Esq. McArdle Law Office, for Appellee-Father

OPINION

*Hoffman, P.J.*

**{¶1}** Appellant J.J. ("Mother") appeals the June 24, 2025 Journal Entry entered by the Guernsey County Court of Common Pleas, Juvenile Division, which overruled her objections to the magistrate's February 21, 2025 decision, designating Appellee B.C., Jr. ("Father") the legal custodian and residential parent of the parties' minor child ("the Child"), and affirmed the same.

STATEMENT OF THE FACTS AND CASE

**{¶2}** Mother and Father are the biological parents of the Child. Mother has an older child with another man ("the Sibling"). The parties were never married, but lived together for three years. On May 9, 2024, Mother took the Child and the Sibling to Cincinnati to visit her mother. Mother returned on the evening of May 27/early morning of May 28, and found another woman in the home she shared with Father. An altercation ensued between Mother and the other woman, which resulted in police involvement. Father spent approximately one-half hour with the Child while the police addressed the situation with Mother and the other woman. Mother immediately returned to Cincinnati with the Child and the Sibling.

**{¶3}** On May 28, 2024, Mother met with Detective Sergeant Brian Carpenter of the Guernsey County Sheriff's Office and alleged Father had sexually abused the Sibling. Mother subsequently presented the Child to Cincinnati Children's Hospital, at which time the Child was diagnosed with a diaper rash.

**{¶4}** On May 29, 2024, Father filed a pro se complaint for parentage, allocation of parental rights and responsibilities, and parenting time. Mother sought a protection

order from the Hamilton County Court of Common Pleas, Domestic Relations Division, which was issued on June 24, 2024. The protected parties were Mother and the Sibling. The magistrate conducted a hearing on Father's complaint on July 10, 2024. Via Magistrate's Decision filed July 15, 2024, the magistrate designated Mother as the legal custodian and residential parent of the Child, granted Father standard visitation, and ordered Father to pay child support. The trial court approved and adopted the magistrate's decision on August 5, 2024.

{¶5} The Child was seen by Heather E. Bensman, Ph.D., at Cincinnati Children's Hospital on July 30, 2024. Mother informed Dr. Bensman, approximately two weeks earlier, the Child began acting strangely, pulling on his penis and pushing the dog's head to his genitals. Mother had not observed the Child behave in this manner prior to May 9, 2024. Mother cancelled one follow-up appointment with Dr. Bensman and "no-showed" three other appointments

{¶6} On August 2, 2024, Father filed a petition for contempt due to Mother's failure to bring the Child to visits. Subsequently, on August 7, 2024, Father filed a request for an expedited date certain for his first weekend visit. On August 28, 2024, Mother filed a motion for change of parenting time. Therein, Mother alleged Father had abused the Child. Father filed a motion to dismiss and countermotion to modify parenting time on September 11, 2024. The magistrate conducted a hearing on September 19, 2024.

{¶7} The magistrate issued a decision on September 23, 2024. The magistrate remarked Mother accused Father of sexually abusing the Child, but did not present any evidence or direct testimony to support her claim. The magistrate noted Mother "bluntly testified that she will not obey an order of the Court," adding "Father will never see [the

Child] no matter what the Court says or does." September 23, 2024 Decision of Magistrate, p. 3. In support of her position, Mother cited Father's May 14, 2018 conviction for unlawful sexual conduct with a minor. The magistrate observed Father was released from community control on May 14, 2021, and the parties lived together between 2021 and 2024. The magistrate commented, "[s]uch conviction did not bother Mother for the three years they resided together." September 23, 2024 Magistrate's Decision. The trial court approved and adopted the magistrate's decision, denied Father's motion to dismiss Mother's motion for change of parenting time, and postponed ruling on Father's August 2, 2024 petition for contempt and September 11, 2024 motion to modify parenting time as well as Mother's August 28, 2024 motion for change of parenting time until the final hearing scheduled for October 17, 2024. The trial court ordered Mother to comply with the standard order of parenting time previously issued.

{¶8} On September 25, 2024, Mother filed a motion for appointment of a Guardian ad Litem for the Child. Thereafter, on September 27, 2024, Mother filed an emergency motion to suspend visitation as Father was currently under investigation for child sexual abuse of the Sibling. Mother attached the Affidavit of Detective Sergeant Brian Carpenter of the Guernsey County Sheriff's Office. In his affidavit, Detective Carpenter averred he was currently investigating an allegation of child sexual abuse against Father and would be concerned for the Child's safety during unsupervised visits. The trial court, in a decision filed the same day, suspended Father's parenting time pending further order of the court. Following a hearing conducted on October 11, 2024, the magistrate reinstated Father's visitation with visits to take place at Cedar Ridge Behavioral Solutions in Cambridge, Ohio. The trial court ordered visitation commence as

soon as possible based upon availability at Cedar Ridge.  The trial court approved and adopted the magistrate's decision on October 25, 2024.

{¶9}    Father filed his first notice of failed compliance, supplemental petition for contempt, and request for an ex-parte order transferring custody to him on November 1, 2024. Father filed his second notice of failed compliance, supplemental petition for contempt, and request for an ex-parte order transferring custody to him on November 8, 2024, and his third notice on November 18, 2024. Mother filed a motion to modify terms and conditions of supervised visitation on November 18, 2024.  The magistrate conducted a show cause hearing on November 25, 2024.  Mother failed to appear at the hearing. The magistrate heard evidence relative to Mother's noncompliance with the trial court's October 25, 2024 Judgment Entry reinstating Father's parenting time.

{¶10} Via decision issued December 2, 2024, the magistrate found Mother in contempt and sentenced her to fifteen days in jail. The magistrate provided Mother with an opportunity to purge the contempt by complying with the trial court's order relative to Father's parenting time.  The magistrate scheduled a final hearing to address all pending motions for December 19, 2024.

{¶11} Between November 22, and December 16, 2024, Father filed his fourth, fifth, sixth, and seventh notices of failed compliance and supplemental petitions for contempt as to Mother's failure to bring the Child to the November 22, November 29, December 6, and December 13, 2024 visits.  Mother filed a motion to continue on December 17, 2024.   Therein, Mother explained Detective Sergeant Carpenter had completed his investigation and the county prosecutor was scheduled to present the case

to the grand jury on December 20, 2024. The magistrate continued the final hearing and suspended Father's parenting time.

{¶12} After receiving a copy of the Amended Report of Grand Jury in which no charges were filed against Father, the trial court scheduled a final hearing before the magistrate for February 20, 2025. Via Judgment Entry filed January 22, 2025, the trial court ordered Mother to bring the Child to the hearing. Mother appeared at the hearing without the Child. The following evidence was presented at the hearing:

{¶13} Attorney Elgine McArdle, counsel for Father, called Mother as the first witness. When Attorney McArdle asked, "Where is [the Child]?," Mother responded, "Not here." Transcript of February 20, 2025 Hearing at p. 6. When asked again, Mother answered, "Not here." *Id*. The trial court directed Mother to answer the question. Mother informed the court the Child was with a babysitter in Cincinnati. Mother initially refused to provide the address of the babysitter, then admitted she did not know the actual address, but knew where she lived and detailed the travel route from her mother's home, where she lived, to the sitter's location. The trial court asked the name of the babysitter, Mother gave only a first name, claiming she did not know the babysitter's surname. Mother also stated she did not know the babysitter's phone number off the top of her head, explaining the number was programmed into her phone. However, Mother left her phone in Cincinnati on the day of the hearing.

{¶14} Mother acknowledged the trial court's January 22, 2025 Judgment Entry advised her failure to bring the Child to the hearing would result in the issuance of a capias for her arrest. However, Mother insisted she was "prepared to go to jail. . . to protect [the Child." *Id*. at p. 16. Regarding her failure to allow Father to see the Child, Mother

explained she did not have transportation because her mother's car, which she used, had been wrecked and she did not have the money to travel to and from the visits. Mother did not advise Father the vehicle was fixed shortly before Christmas because Father's visitation had been suspended by that time. Mother insisted Father sexually abused the Child despite the fact the grand jury decided not to indict Father and despite the fact Father had not seen the Child since May 27, 2024. Mother conceded there was no abuse before May, 2024.

{¶15} Attorney McArdle asked, "You have no intention whatsoever of ever letting [Father] see [the Child]. Correct?" *Id*. at p. 23. Mother responded:

If it's supervised and it is in [the] best interest of my three year old, not [the] best interest of me or of [Father]. The three-hour drive for a three year old is uncalled for. A three year old that is potty training, having to drive that three hours for a two-hour visit to turn around and have to drive that three hours back is unreasonable for a three year old toddler.

*Id*.

{¶16} Mother explained, although the trial court ordered supervised visits, she did not bring the Child to the visits because of transportation. Mother admitted she attempted to give her mother full custody of the Child through Hamilton County Court of Common Pleas. Mother asserted, "I tried to give my mom full custody because I don't want [Father] being alone with my son." *Id*. at p. 24. Mother also filed a petition to establish paternity in Hamilton County Court of Common Pleas despite Father being named as father on the

Child's birth certificate. Mother proceeded to explain why she did not believe Father was the Child's father and claimed she "mentioned it several times" to the trial court. *Id*. at p. 25.

**{¶17}** Mother was questioned extensively regarding each supervised visit to which she failed to bring the Child. Mother responded her failure was due to a lack of transportation or doctors' appointments. Attorney McArdle questioned, "From the time this Court has awarded my client parenting time, you have not complied with any court order; is that correct?" *Id*. at p. 38. Mother answered, "I'm not allowing him to see [the Child] unsupervised. And in the supervised visits, I have reasons why I could not be here." *Id*. Mother conceded she lived with Father for three years and, during those years, "there were never any issues with regard to sexual abuse." *Id*. at p. 43. Mother further admitted she did not honor or facilitate the court ordered parenting time awarded to Father. Mother claimed she did not know Father was a sex offender until after she was pregnant.

**{¶18}** Lexi Huff, supervised visitation coordinator at Cedar Ridge Behavioral Solutions, testified Father's first supervised visitation was scheduled for November 1, 2024. The visits were once a week for two hours. Father appeared for his seven scheduled visits, but Mother failed to bring the Child and/or failed to notify the facility she would not have the Child at the visit each time. Father was prepared for the visits, arriving early and bringing food and toys. Huff contacted Mother after she failed to bring the Child to the November 1, 2024 visit. Mother advised Huff she did not have transportation because her mother's car was involved in an accident and was inoperable. Mother simply "no showed" the next three scheduled visits. Huff was informed Mother and the Sibling were sick and would not be present for the November 29, 2024 visit. The following week,

Huff phoned Mother when she did not come to the visit. Huff eventually texted Mother's mother, who told Huff Mother was sick and had been taken by ambulance to the hospital. Mother advised Huff she did not bring the Child to the final visit as the Child had an appointment.

{¶19} Attorney McArdle called Chanda Golden, Mother's mother, and questioned her as if upon direct examination. When Attorney McArdle asked, "And do you know where [the Child] currently is?," Golden responded, "Do I know where he's at? Yes, I do." *Id*. at p. 74. Attorney McArdle asked, "And where is he?" *Id*. Golden replied, "I'm not – that's up to my daughter." *Id*. After the trial court ordered Golden to answer the question, Golden revealed the Child was with her husband at her home in Cincinnati. Golden further revealed the babysitter Rhonda was her neighbor and had provided child care for the Child. Golden acknowledged she had a rental vehicle while her car was being repaired following the accident.

{¶20} Attorney McArdle rested. Attorney Jacqueline Hunt, counsel for Mother, called Mother on direct. Mother testified she was willing to allow supervised visitation, but had reasons for not being able to bring to the Child to the previously scheduled ones. Mother stated she does not have her own vehicle and is currently unemployed. Mother opposed having the Child travel six hours for a two hour visit with Father, but conceded she had not requested a modification to make the situation easier. Mother indicated she was willing to work with Father to resolve the issue.

{¶21} Via Decision filed February 20, 2025, the magistrate found Mother in contempt of court for failure to comply with the trial court's October 25, 2024 Judgment Entry as ordered in its December 2, 2024 Judgment Entry. The magistrate ordered

Mother immediately begin serving the fifteen-day sentence previously imposed as Mother had failed to purge her contempt. The magistrate also found Mother in contempt for failing to bring the Child to four supervised visits as set forth in Father's fourth, fifth, sixth, and seventh notices of failed compliance and supplemental petitions for contempt. The magistrate further found Mother in contempt for failing to have the Child at the hearing as ordered. The magistrate imposed an aggregate thirty-day sentence, but provided Mother with an opportunity to purge the contempt by releasing the Child to Father's custody by March 5, 2025.

{¶22} Via Decision filed February 21, 2025, the magistrate named Father the legal custodian and residential parent of the Child. The magistrate determined:

* * * a change in circumstances has taken place. Mother has done and will do whatever is necessary to prevent Father from seeing [the Child]. Mother has done and is doing whatever is necessary to frustrate effective parenting by totally excluding Father. Mother's conduct constitutes an event, occurrence or situation that has a material adverse effect upon [the Child]. Couple this change along with mother's refusal to promote love and affection between [the Child] and Father, this change is one of substance. (Citations omitted.)

* * * in looking at the best interests of [the Child], Mother is not and will not promote love and affection between Father and [the Child]. Mother has cut off all contact between Father and [the Child]. She even has refused supervised parenting tome [sic] for Father. Mother's conduct/actions are

belligerent and hateful and as long as [the Child] remains in Mother's care and custody Father will never have a chance to develop a relationship with [the Child]. See, R.C. 3109.04(F)(1)(e), this Court is concerned about Mother's mental health based on her conduct: R.C. 3109.04(F)(1)(f); and, R.C. 3109.04(F)(1)(g), although a shared parenting plan is not involved. Mother's conduct clearly demonstrates that she will not facilitate anything.

*Id*. at pp. 2-3.

**{¶23}** Mother filed timely objections to the magistrate's decision on March 3, 2025. Father filed a response to Mother's objections on the same day. On March 5, 2025, Father was reunited with the Child with the assistance of law enforcement. Upon receipt of the transcript of the February 20, 2025 hearing, Mother filed her first amended objections to the magistrate's decision on June 9, 2025. Father filed a response thereto on June 13, 2025.

**{¶24}** Via Journal Entry filed June 24, 2025, the trial court overruled Mother's objections to the magistrate's decision and affirmed the magistrate's February 21, 2025 decision. Mother filed a motion to stay execution of judgment pending appeal, which the trial court denied.

**{¶25}** It is from the June 24, 2025 Journal Entry Mother appeals, raising as her sole assignment of error:

THE TRIAL COURT ERRED IN GRANTING CUSTODY OF THE
MINOR CHILD TO FATHER AND THAT DECISION WAS CONTRARY TO
LAW.

I

**{¶26}** In her sole assignment of error, Mother challenges the trial court's decision to change custody from Mother to Father.

*Standard of Review*

**{¶27}** We review a trial court's decision allocating parental rights and responsibilities under an abuse of discretion standard. *Miller v. Miller*, 37 Ohio St.3d 71 (1988). In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary, or unconscionable, and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217 (1983). Furthermore, as an appellate court reviewing evidence in custody matters, we do not function as fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent, and credible evidence upon which the fact finder could base his or her judgment. *Dinger v. Dinger*, 2001-Ohio-1386 (5th Dist.)

**{¶28}** Because custody issues are some of the most difficult and agonizing decisions a trial court must make, a trial court must have wide latitude in considering all the evidence. *Day v. Day*, 2023-Ohio-2428, ¶ 25 (5th Dist.), citing *Davis v. Flickinger*, 77 Ohio St.3d 415, 418 (1997). The trial court "is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing

the credibility of the proffered testimony." *Id*. at ¶ 24, citing *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).

*Analysis*

**{¶29}** The power of a court to modify an existing custody decree is provided in R.C. 3109.04(E)(1)(a), which states, in pertinent part:

> The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent * * * and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree * * *, unless a modification is in the best interest of the child and one of the following applies:
>
> (i) The residential parent agrees to a change in the residential parent * * *.
>
> (ii) The child, with the consent of the residential parent * * *, has been integrated into the family of the person seeking to become the residential parent.
>
> (iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.

**{¶30}** Mother challenges each of the trial court's findings relative to the three factors the court must find before modifying custody. We shall address each in turn.

**{¶31}** First, Mother contends the trial court erred in determining a change of circumstances occurred.

**{¶32}** R.C. 3109.04 does not define the concept of "change in circumstances." *Oyler v. Lancaster*, 2020-Ohio-758, ¶ 24 (5th Dist.). However, Ohio courts have held the phrase is intended to denote "an event, occurrence, or situation which has a material and adverse effect upon a child." *Id*., citing *Wyss v. Wyss*, 3 Ohio App.3d 412 (10th Dist. 1982). Additionally, the change of circumstances must be "one of substance, not a slight or inconsequential change." *Id*., citing *Davis v. Flickinger*, 77 Ohio St.3d at 418.

**{¶33}** Mother maintains "[t]he trial court focused its entire inquiry on whether a change in circumstances occurred around [the Child]" based upon Mother denying Father parenting time rather than considering prior findings Father was not monogamous while he and Mother were cohabitating and Father's actions resulted in the issuance of an order of protection. We disagree.

**{¶34}** Our review of the record establishes the trial court did not focus solely on Mother's failure to bring the Child to court-ordered, scheduled supervised visits between November 1, and December 13, 2024. The trial court specifically found, and the record supports, Mother had done and would do whatever necessary to prevent Father from seeing the Child and Mother had done and was doing whatever necessary to frustrate effective parenting by completely excluding Father. From the beginning of the case, Mother made repeated attempts to thwart Father's parenting time.

{¶35} The trial court granted Father standard visitation in mid-July, 2024. In August, 2024, Mother filed a motion for change of parenting time, alleging Father had abused the Child. The magistrate conducted a hearing on September 19, 2024. In his decision filed September 23, 2024, the magistrate remarked Mother accused Father of sexually abusing the Child, but did not present any evidence or direct testimony to support her claim. The magistrate noted Mother "bluntly testified that she will not obey an order of the Court," adding "Father will never see [the Child] no matter what the Court says or does." September 23, 2024 Decision of Magistrate, p. 3. The trial court ordered Mother to comply with the standard order of parenting time previously issued. However, on September 27, 2024, Mother filed an emergency motion to suspend visitation, explaining Father was under investigation for child sexual abuse of the Sibling. The trial court immediately suspended Father's visitation.

{¶36} Following an October 11, 2024 hearing, the magistrate reinstated Father's visitation, but ordered such be supervised. Supervised visitation was scheduled to begin on November 1, 2024. Mother failed to bring the Child to any supervised visits. Further, Mother was ordered to bring the Child to the February 19, 2025 final hearing. Mother did not bring the Child to the hearing and outright lied to the trial court as to the Child's whereabouts.

{¶37} Upon review of the entire record in this matter, we find the trial court did not abuse its discretion in finding a change in circumstances. As noted supra, the trial court is "best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co. v Cleveland*, 10 Ohio St.3d at 80. Deferring to the trial court

on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger*, 77 Ohio St.3d at 419.

**{¶38}** Next, Mother submits the trial court did not appropriately apply the best interest factors in awarding custody to Father. Mother asserts the entirety of the trial court's best interest analysis was the fact Mother denied Father parenting time. We disagree.

**{¶39}** R.C. 3109.04(F) states, in determining the best interest of a child, "the court shall consider all relevant factors, including but not limited to:"

> (a) The wishes of the child's parents regarding the child's care;
>
> (b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
>
> (c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
>
> (d) The child's adjustment to the child's home, school, and community;
>
> (e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights * * *

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court * * *

**{¶40}** Mother asserts "[t]he trial court failed to consider the following facts, which should have weighed on the best-interest determination: 1) Father was a tier II, child victim, registered sex-offender, 2) Father [sic] was the protected party in an Order of Protection from Hamilton County Domestic Relations Court, 3) that Father was not monogamous during the period the parents cohabitated and introduced at least one new partner to the child, 4) the child resided with his sibling in Mother's residence, 5) the child did have a sibling in Father's residence, but that child 'left' upon turning eight-years-old, 6) the Court itself suspended Father's parenting time twice * * * for 3 of the prior 5 months whereas Mother denied it for the middle 2 months of the previous 5 months, 7) Mother had been the primary caregiver for the child for the child's entire life, 8) the child never resided alone with Father, 9) the Child's wishes, and 10) the history of child abuse and domestic violence for Father."  Brief of Appellant at pp. 10-11.

**{¶41}** The best interest determination focuses on the child, not the parent. *In re C.T.*, 2020-Ohio-4965, ¶ 57 (5th Dist.), citing, *In re N.B.*, 2015-Ohio-314, ¶ 59 (8th Dist.). "No one factor is dispositive." *Carr v. Carr*, 2016-Ohio-6986, ¶ 22 (12th Dist.) Rather, the trial court has discretion to weigh any and all relevant factors as it sees fit. *Id.* The trial

court is not required to separately address each best interest factor enumerated in R.C. 3109.04. (Citation omitted.) *Baker-Chaney v. Chaney*, 2017-Ohio-5548, ¶ 25 (5th Dist.). Mother has not presented any evidence to establish the trial court did not consider the aforementioned facts in determining it was in the best interest of the Child to grant custody to Father.

**{¶42}** The trial court found Mother had not and would not promote love and affection between the Child and Father. Mother cut off all contact between the Child and Father, refusing to comply with court-ordered supervised parenting time. The trial court further found "as long as [the Child] remains in Mother's care and custody Father will never have a chance to develop a relationship with [the Child]." Mother's conduct clearly demonstrated she would not facilitate any contact, even minimal, between the Child and Father. Mother's interference with Father's relationship with the Child was substantial, malicious, and ongoing. There was nothing to show Mother would change this behavior should she maintain custody of the Child.

**{¶43}** "[T]he best interest of a child encompasses not only the home environment, but also the involvement of both parents. In today's society that fully admits the need for parenting by both parents, each parent should have full involvement in a child's life, where possible and desired by the parent." *Davis v. Flickinger*, 77 Ohio St. 3d at 419. Accordingly, we find the trial court did not abuse its discretion in finding a change of custody to Father was in the best interest of the Child.

**{¶44}** Finally, Mother claims the trial court failed to consider whether the harm from a change in custody to Father, a tier II sex offender, outweighed the benefits to the Child. We disagree. The trial court had all of the facts surrounding Father's conviction

prior to the final hearing. Mother testified she learned of Father's conviction and status as a registered sex offender while she was pregnant with the Child. Despite this information, Mother stayed with Father, gave birth to the Child, and she, the Sibling, and the Child lived with Father for approximately three years. Mother presented no substantiated evidence a change in custody to Father would harm the Child. The Child needs both parents in his life.

**{¶45}** As noted by our Brethren in the Fourth District Court of Appeals, "children need to know that they are loved by both parents regardless of the antagonism the parents might feel for each other. *Beekman v. Beekman*, 96 Ohio App.3d 783, 789 (4th Dist. 1994). "It is the duty of each parent to foster and encourage the child's love and respect for the other parent, and the failure from that duty is as harmful to the child as is the failure to provide food, clothing, or shelter." *Id.*

**{¶46}** Within her sole assignment of error, Mother argues the trial court did not conduct an independent review of the magistrate's decisions as required by Juv.R. 40(D)(4). Mother suggests, because the journal entries adopting the magistrate's decisions were filed contemporaneously with those decisions and because the judge's name is misspelled in two of the entries, the trial court did not conduct a "judicial review." We disagree.

**{¶47}** Once a party objects to a magistrate's decision in accordance with Juv.R. 40, the trial court must "undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." Juv.R. 40(D)(4)(d). *In re F.M.B.*, 2011-Ohio-5368, ¶ 9 (4th Dist.).

**{¶48}** "Ordinarily, a reviewing court will presume that the trial court performed an independent analysis in reviewing the magistrate's decision." (Citation omitted). *Id.* at ¶ 11. "Thus, the party asserting error bears the burden of affirmatively demonstrating the trial court's failure to perform its duty of independent analysis. (Citations omitted.) *Id.* "Further, simply because a trial court adopted the magistrate's decision does not mean that the court failed to exercise independent judgment." (Citation omitted.) *Id.* "Juv.R. 40(D)(4) allows the trial court to adopt the magistrate's decision if the court fully agrees with it." (Citations omitted.) *Id.* There is nothing in the record before this Court to suggest the trial court failed to conduct an independent review of the magistrate's decisions.

**{¶49}** Based upon the foregoing, Mother's sole assignment of error is overruled. The judgment of the Guernsey County Court of Common Pleas, Juvenile Division, is affirmed. Costs assessed to Appellant.

By: Hoffman, P.J.

Popham, J. and

Gormley, J. concur